# Houston Biscuit Co. *v.* Dial.

*Action by Employe Against Employer to recover Damages for Personal Injuries.*

1. *Action by employe for personal injuries; sufficiency of complaint.* In an action by an employe against his employer to recover damages for personal injuries caused by the starting of a machine in defendant's factory, and received while engaged in oiling said machine, in the discharge of the duties of his employment, a count of the complaint which avers that the machine was not in motion when plaintiff began to oil it, but the operation of said machine, run by steam, was controlled

[Houston Biscuit Co. v. Dial.]

by a belt arranged to run interchangeably on pulleys, so that when the belt was on a fixed pulley the machine was put in motion, and when it was on the loose pulley the machine would be stopped, that there was originally attached to the machine a sliding bar used for shifting such belt from one pulley to the other, and such bar was necessary to the safe operation of the machine, that at the time of the accident complained of said sliding bar had been removed from the machine by the president (naming him) of the defendant, who was intrusted with the superintendence of its entire business management, that if said sliding bar had been in place and properly adjusted the plaintiff would not have been injured, that "said defect had been of long standing and was well known to the defendant company by and through its said president," but was not known to plaintiff,— sufficiently states a cause of action arising from a defect in the defendant's ways, works and plant, within the meaning of subdivision one of the employer's liability act, (Code, § 1749); nor is such count subject to demurrer for not sufficiently imputing notice to defendant of the alleged defective condition of said ways, works or plant.

2. *Same; same.*—In such action, a count of the complaint, which, after alleging the prefatory facts as above set out, and averring that to prevent said belt from shifting of its own motion or accidentally from one pulley to the other there was attached to said machine a shifting bar (describing it) to control the movements of the belt, which shifting bar formed part of the machine, then avers that at the time of the accident "said bar was not attached to the machine, but had been negligently removed therefrom by defendant," and that by reason of the absence of said shifting bar the belt slipped from the loose pulley to the fixed pulley, whereupon the machine, which plaintiff was oiling, suddenly started and inflicted the injuries complained of, states a cause of action under subdivision one of the employer's liability act (Code, § 1749).

3. *Same: same: when not necessary to allege name of party to whom negligence is attributed.*—In an action against an employer to recover damages for personal injuries to an employe, where it is alleged in the complaint that the injury was caused by reason of defects in the condition of the ways, works, machinery or plant of defendant, which defects arose from, or had not been discovered by reason of, the negligence of some person intrusted by defendant with the duty of see-

[Houston Biscuit Co. v. Dial.]

ing that the ways, works, machinery or plant were in proper condition, (Code, § 1749, sudbiv. 1), it is not necessary to aver the name of the person so intrusted with such duty.

4. *Evidence; competency of testimony showing bias or interest of witness.*—Where a person has been examined as a witness in a case, it is competent to introduce testimony showing his partiality or his interest in the case being tried; and, therefore, in an action against a manufacturing company by an employe to recover damages for personal injuries, where the president, who was superintendent, is examined as a witness, it is competent, as tending to show his partiality or interest in the case, to prove that said president tried to get a co-employe of plaintiff to give a statement that the injuries complained of were caused by plaintiff's own fault or carelessness; and for the same purpose, it is competent to cross-examine said president and superintendent about his effort to secure said co-employe of plaintiff to make such statement.

5. *Evidence; admission of irrelevant evidence will not work a reversal if it subsequently becomes relevant.* — If evidence *prima facie* irrelevant becomes relevant at any stage of the cause, its admission is not error which will operate a reversal, although when offered and received it was irrelevant.

6. *Same; not reversible error to admit relevant evidence for wrong purpose.*—When evidence is admissible and relevant for a particular object, and is received for another and different object, its admission is not a reversible error, as its effect could have been limited by proper instructions.

7. *Same; error cured by subsequent withdrawal of evidence.*—Error in the admission of irrelevant evidence is cured by its subsequent withdrawal.

8. *Evidence; expert witness; cross-examination.*—In an action by an employe against his employer to recover damages for personal injuries alleged to have been caused by reason of defects in the ways, works, machinery or plant of defendant, where the defendant has examined a witness as an expert and elicited from him evidence tending to show that the machinery in question was in safe condition, at the time of the accident, it is competent for the plaintiff, on the cross-examination of said witness, to test his knowledge as to the safety of said machinery by asking him as to its safety under hypothesized conditions that may have existed; and this is true even in the absence of evidence that all such hypothesized conditions actually existed in fact.

9. *Action to recover damages for personal injuries; charge of court as to inference drawn from the evidence.*—In an action by an employe against his employer, to recover damages for per-

[Houston Biscuit Co. v. Dial.]

sonal injuries caused by the starting of a machine in the defendant's factory, and received while plaintiff was engaged in oiling said machine in the discharge of his duties, where it is alleged that the machine was suddenly started by reason of the belt accidentally or of its own motion slipping from a loose pulley to a fixed pulley, and that this was made possible by reason of a shift bar which controlled said belt being negligently removed from the machine, and there was evidence introduced by the plaintiff that on previous occasions the belt had accidentally or of its own motion slipped from the loose to the fixed pulley, starting the machine, but a witness for the defendant testified that at the time of the accident the belt was shifted to the fixed pulley by one of the defendant's employes, charges requested by the defendant instructing the jury that they could not infer from the evidence of what had previously occurred that at the time of the accident the belt slipped of its own motion and started the machine, are erroneous and properly refused.

10. *Same; duty of employer to employe; charge in reference thereto.* In an action by an employe against an employer to recover damages for personal injuries alleged to have been sustained by reason of defects in the ways, works, machinery or plant of the defendant, charges which instruct the jury that if they find from the evidence that the defendant exercised reasonable care and diligence in the selection of suitable and safe machinery and that the same was suitable and safe for the purposes for which it was being run, then the plaintiff can not recover, are erroneous and properly refused, since an employer owes its employees the duty to use care in the maintenance of its machinery, as well as in providing it originally.

11. *Action to recover for personal injuries; contributory negligence; charge in reference thereto.*—In an action by an employe against a nemployer to recover damages for personal injuries alleged to have been caused by defects in the ways, works, machinery or plant of the defendant, and to have been sustained by the plaintiff while he was engaged in oiling a machne in the discharge of his duties, and it appears from the evidence that the plaintiff while oiling the machine was wearing a glove, but there was evidence introduced tending to show that a part of the machinery necessary for its safe operation had been removed by the defendant's superintendent, a charge is erroneous and properly refused which instructs the jury that if they find from the evidence that "the plaintiff at the time of the accident was oiling the defendant's machine with a glove on his hand, and that the glove increased the danger in-

cident to oiling the machine, and that it was not necessary
for the plaintiff to have worn a glove, and that in oiling the
machine the glove became caught between the cog wheels, then
such was contributory negligence on his part, and which will
bar a recovery;" the question as to whether the facts predi-
cated in said charge constituted contributory negligence, be-
ing a question for the determination of the jury, and not for
the determination of the court.

APPEAL from the City Court of Birmingham.

Tried before the Hon. CHAS. A. SENN.

This was an action brought by the appellee, Lee Dial,
against the appellant, the Houston Biscuit Company,
to recover damages for personal injuries alleged to have
been caused by the negligence of the defendant.

The complaint as amended contained eight counts. De-
murrers were sustained to the first six counts. The
seventh and eighth counts were in words and figures
as follows: "7. The plaintiff claims of the defendant
the further sum of fifteen thousand dollars, as damages
for that, heretofore, to-wit, the 14th day of December,
1899, the defendant, the Houston Biscuit Company,
owned and operated a bakery in the city of Birmingham,
Alabama, which was composed of a belt, shaftings, pul-
leys, cog-wheels, besides a great deal of complicated
machinery and, among other things, was a large dough
mixer, which was put in motion only by the sliding of
a vertical belt from a loose pulley to a fixed pulley. And
plaintiff avers that there was originally attached to said
machinery an iron bar fitted with a pronged guide,
which said bar slided backwards and forwards in
grooves and guides, and which bar when so attached
formed a material part of said machine and was neces-
sary to the safety of the same, and that without said
iron bar the operation of said machine was dangerous
and unfit to be in said business, and but for want of
proper care and diligence would have been known to
the defendant and all of which was unknown to the plain-
tiff; that said iron bar had been negligently removed,
which fact was well known to the defendant company,
or to George Jackson, who was then president of said
company; that subsequent to the removal of the iron

bar aforesaid, the plaintiff was employed in person by the said George Jackson, president of said company, to operate the engine and to keep the machinery well and properly oiled, including the 'big mixer,' and that in obedience to instructions from the said president, who was intrusted with the superintendence of the entire business management of said company, plaintiff did oil the machinery in said factory. And plaintiff further avers that he did not know of the necessity or the importance of said iron bar, and that he had not been informed that the same had been removed from the machinery, and that he had no instruction or warning from the said president or any other person that there was any danger in the operation or oiling of said machinery without the appliance of said iron bar, the plaintiff while in the exercise of his duties as an employee and with due and proper care, and while said mixer was motionless proceeded to oil the journals of the said mixer, when suddenly and rapidly it started to run, and plaintiff's hand was caught in the cog-wheel of said mixer, and plaintiff avers that if said iron bar had been in its place and properly adjusted the said 'big mixer' would not have suddenly and rapidly started, and plaintiff would not have suffered damages complained of. And plaintiff avers that because of the negligent defect above referred to, which said defect had been of long standing and was well known to the defendant company by and through its said president, and which was unknown to plaintiff, and by reason of the negligence of the said defendant in failing to remedy the said defect, the plaintiff has been disabled and disfigured for life, has suffered great bodily pain and mental anguish, hence this suit.

"8. The plaintiff claims of the defendant the further sum of fifteen thousand dollars as damages for that, heretofore, on to-wit, the 14th day of December, 1899, the defendant owned and operated a bakery in the city of Birmingham, Alabama, for the making of cakes, biscuits, and crackers, which were made out of flour and other material mixed together; that machines were used in said bakery to mix aforesaid materials; that said machines were operated by steam power, communicated

from a steam engine by a system of shafting and belting;
that said system is more fully and particularly described
as follows:    Attached to the steam engine and forming
a part thereof is a large wheel, known as the driving
pulley; the power from the driving pulley is communi-
cated to the shafting by a leather belt, the power from
the shafting is communicated to the various machines
by belts working on pulleys forming part of said ma-
chines; that one of the machines operated in said fac-
tory and by the system aforesaid is known as the 'big
mixer'; that said machine is supplied with two pulleys,
one known as the fixed pulley and the other known as
the loose pulley; that said machine can be started or
stopped whilst the engine is working by sliding the belt
from one pulley to the other, and in order the more per-
fectly to control and prevent it from shifting of its
own accord or accidentally, provision is made in said
machine for attaching thereto an iron bar, fitted with a
pronged guide, which said bar slides backwards and for-
wards in grooves and guides, and which said bar, when
so attached forms part of said machine; that said bar
was not attached to said machine but had been negli-
gently removed therefrom by the defendant; that on
to-wit, the day aforesaid, the plaintiff was in the em-
ployment of the defendant as engine driver, and that as
part of his duties he had to oil the bearings of the vari-
ous machines used by the defendant in said bakery; that
on the morning of the day aforesaid the plaintiff was
engaged in oiling the bearings of the aforesaid machine
known as the big mixer; that at the time he was so en-
gaged the said machine was not in motion or operation,
and the belt was running on the loose pulley of said
machine; that in order to reach the parts of the said
machine to be oiled, plaintiff was obliged to stoop or
kneel down and stretch his hand underneath the said ma-
chine and between the wheels; that whilst plaintiff was
so engaged and situated as aforesaid the said machine
suddenly and without warning to the plaintiff started
to work; that plaintiff's right hand was caught and
dragged between the revolving cog-wheels which formed
part of the machinery of said big mixer, and was so
crushed, torn and lacerated that he was obliged to have

a painful operation performed to remove the injured parts and members;that said injured parts and members consisted of the entire thumb, the two first fingers and half of the palm; and plaintiff avers that as a result of said injuries he has been crippled for life, and rendered less able to work for his living and earn money; and plaintiff further avers that by reason of the absence of the aforesaid iron bar or pronged guide from the aforesaid big mixer, which had been negligently removed by the defendant without the knowledge of the plaintiff, the belt slipped from the loose pulley on to the fixed pulley of the 'big mixer' and started the cog-wheels to work, between which the plaintiff's hand was caught and crushed as aforesaid; and plaintiff further avers that the absence of said sliding bar and pronged guide was known to the defendant or could have been known to the defendant by the exercise of ordinary diligence, but had arose from and had not been remedied owing to the negligence of the defendant, its agent or employee entrusted by it with the duty of seeing that the ways, works, machinery and plant were in proper condition, and plaintiff further avers that he was caused to suffer great physical and mental pain as a result of said injuries, all to his damage as aforesaid, hence he sues."

To these counts the defendant demurred upon the following grounds: "1st. The defect alleged to have existed in the defendant's ways or plant is not a defect within the meaning of subdivision one of the Employer's Liability Act, § 1749, Code of Alabama, 1896. 2d. For that it appears from said count the plaintiff was injured by the negligence of a fellow servant not within the purview or scope of any subdivision of the Employer's Liability Act, § 1749, of the Code of Alabama, 1896. 3d. For that it appears from said count the absence of the iron bar therein described was not at the common law a defect in the defendant's machine. 4th. For that the plaitiff seeks to recover in the same count by reason of an alleged defect in the defendant's ways or plant under subdivision one of the Employer's Liability Act, § 1749, of the Code of Alabama, 1896, and at the common law. 5th. For that it appears from said count

that the plaintiff knew of the condition of the defendant's ways and plant and remained in the employ of the defendant after the lapse of a reasonable time for its remedy. 6th. For that it does not appear from the averments of said count that the defective condition of the defendant's ways or plant was not discovered or remedied owing to the negligence of some of its employees, entrusted by it with the duty of seeing that its ways or plant were in proper condition. 7th. For that said count fails to state the name of the person in the defendant's employ who was entrusted by the defendant with the duty of seeing that its ways or plant were in proper condition. 8th. For that it appears from said count that the plaintiff was the engineer employed to drive the defendant's machinery and was the person entrusted by the defendant with the duty of seeing that its ways or plant were in proper condition. 9th. For that it appears from said count that the plaintiff himself was guilty of negligence which contributed proximately to his injury, and there is no averment therein that the defendant was guilty as to the plaintiff of any wanton, reckless or intentional negligence. 10th. For that there is a misjoinder of actions in said count in this, that the plaintiff seeks to recover of the defendant in the same count under subdivisions one, two and three of the Employer's Liability Act, § 1749 of the Code of Alabama, 1896. 11th. For that there is no averment in said count that the defendant knew that the absence of the iron bar from the machine mentioned therein rendered said machine unsafe. 12th. For that neither of said counts show in what way or through whom the defendant knew of the existence of the alleged defect or negligence mentioned in said counts. 13th. For that neither of said counts (seventh and eighth) gives the name of the person entrusted by the defendant with the duty of seeing that its ways or plant were in proper condition, who after knowledge of the defects or negligence mentioned in said counts, failed within a reasonable time to remedy the same. 14th. The defendant demurs to the seventh and eighth counts of the complaint for that neither of said counts are sufficient common law counts, in that neither of sai counts avers that the

company failed to use proper care to obtain and employ suitable and proper machinery in connection with its plant. 15th. For that neither said seventh or eighth counts are sufficient common law counts, in that it appears from said counts that the plaintiff knew of the absence of the iron bar mentioned therein and after such knowledge remained in the defendant's employ after the lapse of a reasonable lapse of time for its replacement."

These demurrers were overruled, and to the overruling of the demurrers to each of the counts the defendant separately excepted. The defendant pleaded the general issue and by special plea set up the contributory negligence of the plaintiff.

It was shown by the undisputed evidence that the plaintiff suffered the injuries complained of by having his hand caught in the cog-wheel which was on what is known as the mixer, a large piece of machinery used by the defendant in its bakery; that at the time his hand was caught in the cogs and mashed the plaintiff was employed by the defendant as an engineer, and it was his duty as engineer, among other things, to oil the machinery in the bakery, and that when the accident occurred he was engaged in oiling the mixer, which was a large piece of machinery used for mixing dough. It was further shown by the evidence that the machinery in the bakery was driven by steam power; that there was a revolving shaft suspended from the ceiling of the room and from this shaft there were belts running to the different pieces of machinery, by means of which belt the machinery was put in motion; that the big mixer was provided with two pulleys, one known as a fixed pulley and the other known as the loose pulley, and when the belt was on the fixed pulley it was put in motion, and when the belt was on the loose pulley the mixer stopped.

The evidence for the plaintiff tended to show that when the mixer was first put in place, it was provided with what was known as a shifter, which was an iron bar fitted with a pronged guide, which slided back and forth in a groove, and by means of which the belt to

12

be used on the pulleys was shifted from the fixed pulley to the loose pulley, and from the loose pulley to the fixed pulley, as the occasion required; that this shifter formed a material part of the mixer and was necessary for its safe operation; that although it was an essential part of the machinery in question, the shifter had been taken off, and at the time the plaintiff was employed by the defendant it was not on the mixer; that the result of the shifter not being on the machine was that the belt would, of its own motion, slip from the loose pulley to the fixed pulley, and in this way start the machine; that at the time of the accident the plaintiff knew there was no shifter attached to the mixer and said mixer would start in motion by reason of the belt slipping from the loose pulley to the fixed pulley; that at the time the plaintiff went to oil the mixer, in discharge of his duties as imposed by the defendant, the mixer had stopped, and as long as it was not in motion there was no danger attached to oiling it; and that while so engaged in oiling it, the belt slipped from the loose pulley to the fixed pulley and started the mixer in motion, by reason of which the plaintiff's hand was caught in the cog-wheels and mashed and lacarated; and that if the mixer had been provided with a shifter, it would not have started.

There was evidence introduced for the defendant tending to show that the shifter was not absolutely necessary for the safe and proper operation of the machine in question; that while the machine was not, at the time of the accident, provided with a shifter which was originally attached to it, there was an improvised shifter which answered all purposes, and that by reason of the construction of the pulleys, it was not possible for the belt to shift from the loose pulley to the fixed pulley, thereby starting the machine; that the plaintiff was not careful in oiling the machine and employed dangerous methods therefor. There was some evidence introduced for the defendant tending to show that the machine which injured the plaintiff did not start by reason of the belting shifting from the loose to the fixed pulley, but it was started by some one of the employees of the defendant moving the belt.

[Houston Biscuit Co. v. Dial.]

One B. B. Martin, who was examined as a witness for the plaintiff, testified that at the time the plaintiff was injured Mr. G. F. Jackson was the president of the defendant company, and had supervision over all the business of the defendant, and the superintendence of the defendant's factory. During the examination of the witness Martin he was asked if he did not have a conversation with Mr. Jackson on the next day after the accident to the plaintiff, with reference to the machinery or the effectiveness of that machinery. The defendant objected to this question because it called for a conversation which occurred after the accident. Upon plaintiff's counsel stating that he proposed "to show the declaration of the president as to how the accident occurred, and that he wanted the witness to make a statement to protect the insurance company," the court overruled the objection, and the defendant duly excepted. The witness answered that he did have a conversation with Mr. Jackson the next morning, in which Jackson told him that he wanted him to sign a paper stating that the accident was caused by the plaintiff's own carelessness, and that the witness refused to sign such paper. The court excluded all this testimony of the witness except the statement of Jackson when he asked the witness if he would not sign the statement that the accident was caused by the plaintiff's carelessness. To this ruling the defendant duly excepted

During the examination of said G. F. Jackson, who was introduced as a witness for the defendant, the plaintiff asked him if he did not state to Mr. Martin, just after the accident to the plaintiff occurred, that he wanted him to state if it was any fault of the company, inasmuch as it was necessary to make some statement to the insurance company. The defendant objected to this question on the ground that it called for irrelevant, immaterial and incompetent evidence. The court overruled the objection, and the defendant duly excepted. The witness answered that he had asked the persons at the factory the next morning after the accident to tell him the facts in reference thereto.

During the examination of one Leveritt, as a witness for the plaintiff, he testified that prior to the accident

to the plaintiff that a boy by the name of Jordan had had the end of his finger cut off in the same machine which injured plaintiff, and this injury was caused by the belt shifting from the loose pulley to the fixed pulley. The defendant objected to the question calling for this evidence, and also moved to exclude the evidence upon the ground that it was incompetent, illegal and irrelevant, and constituted no part of the *res gestae*. The court overruled the objection and motion, and to each of these rulings the defendant separately excepted. During the cross-examination of this witness, Leveritt, it developed that he did not see the accident to the boy, Jordan, but had been told thereof. Thereupon the defendant moved the court to exclude all the testimony in reference to the accident to the said Jordan, which motion was granted.

The defendant introduced as a witness one E. F. Titus, who testified that he had been in the employ of the defendant company for about a year, and had charge of the factory and the machinery, but that he was not in the employ of the defendant at the time of the accident to the plaintiff. This witness testified in substance that by reason of the manner in which the pulleys were arranged it was impossible for the belt to shift from the loose pulley to the fixed pulley, and that the machine and shifter, as situated at the time of the accident, were safe enough, so far as the machine was concerned. Upon the cross-examination of this witness he was asked whether or not he considered it as safe to run the machine in question without a shifter as with a shifter, and whether or not it was probable, if the pulleys were perfectly level, that the belt on the loose pulley could get on to the tight or fixed pulley. Defendant objected to this question upon the ground that the conditions stated in the question were not the conditions in the case. The court overruled the objection, and the defendant duly excepted. Upon the witness answering that in such case he would consider the machine safe; he was then asked by the plaintiff if the belt was not cut true, by reason of which it would run from one side to the other, would he then consider the machine in as safe condition as it

would be if it had a shifter on either the loose pulley or the tight pullley.

Upon the examination of one Howard, as a witness for the defendant, he testified that at the time of the accident to the plaintiff the belt was shifted to the tight pulley by one Conrad, but there was evidence on the part of the plaintiff tending to show that the witness Howard was not present at the time of the accident, and did not see the belt when it was shifted.

· Upon the introduction of all the evidence the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "I charge the jury that there was no evidence in this case that the belt slipped from the loose pulley on the fixed pulley, thereby suddenly starting the big mixer and injuring the plaintiff." (2.) "I charge the jury that they are to find the facts in this case, and not to infer the facts, and if the jury finds that the belt slipped from the loose pulley to the fixed pulley, and that this was the cause of the accident to the plaintiff, such finding of the facts must be grounded and based upon some evidence in the cause, and not upon mere inferences." (3.) "I charge the jury that it can not infer that the belt slipped from the loose pulley to the fixed pulley from the fact that on a former occasion it had slipped in that way, but its finding of such a fact must be based upon some evidence in the case that it did slip from the loose pulley to the fixed pulley, and that this occasioned the accident to the plaintiff." (4.) "I charge you that if from the evidence you find that the plaintiff at the time of the accident was oiling the defendant's machine with a glove on his hand and that the glove increased the danger incident to oiling the machine, and that it was not necessary for the plaintiff to have worn a glove, and that in oiling the machine the glove became caught between the cog-wheels of the machine, thereby drawing the plaintiff's hand between the wheels, then such was contributory negligence on his part, and which will bar a recovery." (5.) "I charge the jury that the defendant is not an insurer of the lives of its employees, and that under the averments of this complaint there can be a

Vol. 135.

recovery on the ground only of the existence of a defect in the ways or plant of the defendant. And if the jury find from the evidence that the defendant exercised reasonable care and diligence in the selection of a suitable and safe machine, and that the same was a suitable and safe machine for the purpose for which it was being run, then the plaintiff can not recover in this case." (6.) "If the jury believe the evidence, they must find for the defendant." (7.) "If the jury believe the evidence, they must find for the defendant under the 7th count of the complaint." (8.) "If the jury believe the evidence, they must find for the defendant under the eighth count of the complaint." (9.) "The court charges the jury that there was no evidence in this case of any defect in the ways, works or machinery of the defendant at the time of the accident to Lee Dial, and you must not presume any such thing." (10.) "I charge the jury that the law does not require the defendant to guarantee the safety of its machinery as to its employees, but it does require the defendant to have exercised reasonable care and diligence in the selection of a suitable and safe machine, and if the jury find that such care and diligence was exercised in this case by the defendant in providing a reasonably safe machine on which the plaintiff was oiling, then I charge the jury there can be no recovery in this case."

There was judgment for the plaintiff, assessing his damages at $2,000. The defendant made a motion for a new trial upon the grounds that the verdict of the jury was contrary to the law and the evidence in the case, and further assigned as grounds for the motion each of the several rulings of the trial court which were adverse to the defendant. This motion was overruled, and the defendant duly excepted. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

JOHN F. MARTIN, for appellant, cited *Wabash Paper Co. v. Webb,* 45 N. E. Rep. 474; *Erwin v. Evans,* 56 N. E. Rep. 725; *Railway Co. v. Locke,* 112 Ind. 421, 14 N. E. Rep. 391; *Holliday v. Gardner,* 59 N. E. Rep. 686;

*Ross v. Pearson Cordage Co.,* 164 Mass. 257; *Solvia v. Wanfacy & Mills,* 177 Mass. 194.

J. W. BUSH and F. I. MONKS, *contra,* cited *King v. Pope,* 28 Ala. 600; *A. G. S. R. R. Co. v. Jones,* 71 Ala. 487; *Ala. G. L. Ins. Co. v. Insurance Co.,* 81 Ala. 329; *Tabler v. Sheffield, etc., Co.,* 87 Ala. 305; *L. & N. R. R. Co. v. Lancaster,* 121 Ala. 474; *Southern R. Co. v. Posey,* 124 Ala. 486; *Donahue v. Brown,* 154 Mass. 21; *Mooney v. Lumber Co.,* 154 Mass. 407; *Ross v. Pearson Cordage Co.,* 164 Mass. 257; *Connors v. Manfg. Co.,* 156 Mass. 163.

SHARPE, J.—In the trial court all counts of this complaint except the seventh and eighth were disposed of on demurrer. The overruling of demurrers to the last named counts is among other matters here assigned as error. In each of those counts a cause of action is sought to be predicated upon a violation of duty owed by defendant to plaintiff as its employe in respect of a condition of machinery used by defendant in its bakery whereby he received an injury for which he sues. Relative to that condition each of those counts avers in substance that the machinery was driven by a steam engine, that the operation of a particular dough mixing machine was controlled by a belt arranged to run interchangeably on two pulleys, one fixed and the other loose, so that when the belt was on the fixed pulley the machinery of the mixer would be put in motion, and when or the loose pulley that motion would be stopped. In count 8 it is averred that to prevent the shifting of the belt of its own motion or accidentally from one pulley to the other, "provision is made in said machine for attaching thereto an iron bar fitted with a pronged guide, which said bar slides backwards and forwards in grooves and guides and which said bar so attached forms part of said machine," and that at the time of the accident "said bar was not attached to the machine but had been negligently removed therefrom by the defendant." Other averments in that count are to effect that plaintiff was in the employ of defendant, and in the discharge of his duties as

such employe was oiling the machinery of the mixer while it was still, and that by reason of the absence af the bar before mentioned, the belt slipped from the loose pulley to the fixed pulley, whereupon the machinery on which he was working suddenly started and crushed his hand. In count 7 also the absence of a sliding bar is averred apparently to show a defect in the machinery, though no particular relation between the functions of the bar and of the belt are in that count specified. · It is there averred, however, that the bar was originally attached to and was necessary to the safe operation of the machinery, that it had been removed therefrom and that if it had been in place and properly adjusted, the mixer would not have started suddenly and plaintiff would not have suffered the damage complained of. Neither of these counts avers in direct terms that the machinery was defective by reason of the absence of the bar or otherwise, but neither of them has the fault attributed to it by the demurrers, of showing affirmatively that "the defect alleged to have existed in the defendant's ways or plant is not a defect within the meaning of subdivision one of the Employer's Liability Act, section 1749 of the Code. The absence of a device needed to prevent the self-starting of machinery made a condition like that upon which negligence was predicated in *Donahue v. Brown*, 154 Mass. 21. See also *Mooney v. Connecticut*, etc. *Ib.* 407. The seventh count sufficiently imputes notice of that condition to the defendant by averments which, though disconnected, are to effect that the removal of the bar was the act of defendant's president, Jackson, who was intrusted with the superintendence of its entire business management, and that "said defect had been of long standing and was well known to the defendant company by and through its said president." Since a corporation can act and receive knowledge only through its officers and agents, it is in respect of defects in its machinery, ways, etc., bound by the action of its general superintendent.—*Quincy Coal Co. v. Hood*, 77 Ill. 68; *Patterson v. Pittsburg*, etc., *R. R. Co.*, 76 Pa. St. 389; 18 Am. Rep. 412. That it does not aver the name of the person referred to as being charged with the duty of

seeing that the machinery was in proper condition is not a valid objection to the complaint.—*McNamara v. Logan*, 100 Ala. 187; *Woodward Iron Co. v. Herndon*, 114 Ala. 191. While they may not be above criticism these counts are not subject to the objections raised by the demurrers.

The fact that defendant examined Jackson as its witness gave relevancy to Martin's affirmation that Jackson requested him to sign a statement to be prepared by a company that had insured defendant, declaring that the injury came through plaintiff's own fault. Jackson's attempt, if made, so to procure the exculpation of defendant, whether for its advantage or for the benefit of the insurance company, was a circumstance evidential of partiality or interest on his part, calculated to bias his testimony. Being relevant for one purpose it is unimportant that this testimony of Martin's may have been introduced for another purpose.—*Goldsmith v. Picard*, 27 Ala. 142; *Cook v. Parham*, 24 Ala. 21. The introduction of it in advance of the examination of Jackson, though irregular, involved no reversible error.—1 Brick. Dig., 809, § 86. To show he had such concern for defendant as might influence his testimony, it was proper to allow the cross-examination of Jackson about his conversation with Martin on the subject of signing a statement of the kind referred to.

If there was any error in allowing Leveritt to testify as to an injury to one Jordan by this machinery, that error was rendered innocuous to defendant by the development of the hearsay character of that testimony and its consequent exclusion.

The defendant having elicited from its witness, Titus, his opinion as to the safety of the machine, it was not improper to allow the witness' knowledge on that subject to be tested by questions as to whether the belt would slip under hypothesized conditions that may have existed even in the absence of evidence that all such conditions existed in fact.

It is axiomatic that like causes under like conditions produce like results; and accordingly evidence that the belt had on previous occasions slipped from the loose

to the fixed pulley by the unaided action of the machinery, was relevant as possibly affording an inference that such a transition of the belt was so effected on the occasion in question.—*Mooney v. Connecticut, etc. Co., supra.* If not discredited, the testimony of Howard affirming that the belt was shifted to the fixed pulley by Conrad would have left no room for such inference; but there was evidence tending to prove Howard was not present and did not see the belt shifted; consequently it was open to the jury to reject that part of his testimony and to infer from the evidence of what had previously occurred that the belt slipped of its own motion and started the mixer in consequence of the absence of the sliding bar.    The giving of either of charges 1, 2, 3, and 9 would have restricted improperly the effect of inferences which the jury was authorized to draw from the evidence.

The duty which under the statute the defendant owed its employes extended to the use of care in the maintenance of its machinery as well as in providing it originally, but this duty of maintenance is ignored in charges 5 and 10.

Whether the facts predicated in charge 4 were such as constitute contributory negligence was a question for the jury and not for the court to determine.    Under the pleading and evidence the question of negligence *vel non* both on the part of the defendant and of plaintiff were proper for the consideration of the jury.

Reversible error is not found either in the proceedings had on the trial of the main case or of the motion for a new trial.

Affirmed.