## RILEY v. STATE.   (4 Div. 39.)

(Supreme Court of Alabama.   May 17, 1923.)

**1. Courts ⬦⟶62—General act as to terms of circuit courts held not repealed by local law as to certain county.**

Gen. Acts 1915, p. 707, requiring that the circuit courts be open for business from the first Monday in January to and including the last Saturday of June, and from the first Monday after July 4th to and including the last Saturday before Christmas, was not repealed, as pertaining to Dale county, by Gen. Acts 1919, p. 534, providing that circuit court shall be held therein on the third Monday in February and the third Monday after the last Monday in July, and that it may continue two weeks at each term; the passage of such local law being permissible under Const. 1901, § 105, notwithstanding the general law.

**2. Criminal law ⬦⟶279—Plea in abatement permitted to be filed after plea to merits considered as if filed before.**

A plea in abatement challenging the grand jury's authority on the date of the return of the indictment being available to defendant as a matter of right before a plea to the merits is interposed, the court's ruling, in the exercise of a sound discretion, permitting such plea to be filed after a plea of not guilty, will be considered as if it were interposed before such plea to the merits.

**3. Grand jury ⬦⟶30—Dale county grand jury for regular term beginning in February held available for special term beginning May 31st.**

Under Gen. Acts 1915, p. 812, § 13, and Gen. Acts 1909, p. 312, § 18, the grand jury for the regular term of the Dale county circuit court convening on the third Monday in February for two weeks, as provided by Gen. Acts 1919, p. 534, was available for a special term called for May 31st, though the court's order directing service of summons on the grand jury recited that it had not been discharged "at the last regular term," such order referring, not to the term expiring on the last Saturday before Christmas of the preceding year as provided by the general law, but to the term extending from the first Monday in January to the last Saturday of June, which had not expired when the special session was called.

**4. Jury ⬦⟶82(2)—Failure to draw regular jurors for week and special jurors for defendant's trial held not prejudicial error.**

Error in drawing the names of 75 persons "to constitute the jury for the trial of cases during the week" in which defendant was tried for a capital felony, instead of drawing "regular jurors for the week" and "special jurors" for defendant's trial, as required by Gen. Acts 1919, p. 1040, § 32, held not prejudicial to defendant, and hence not a ground for quashing the venire.

**5. Criminal law ⬦⟶134(1)—Burden of showing that impartial trial cannot be reasonably expected is on defendant on application for change of venue.**

On application for change of venue in criminal cases, it is the judge's duty to ascertain fairly and impartially from the application and the evidence in support of and against it whether defendant can reasonably be expected to obtain a fair and impartial trial by an unbiased and unprejudiced jury, and the burden is on defendant to show, to the court's reasonable satisfaction, that such trial and an unbiased verdict cannot be reasonably expected.

**6. Criminal law ⬦⟶589(5)—Refusal of continuance to subsequent term because some jurors had read newspaper articles concerning crime held not abuse of discretion.**

Where some of the jurors stated that they had read newspaper articles concerning the crime charged, but that such fact would not affect their verdict or prejudice defendant's cause, the court did not abuse his discretion in refusing a continuance to a subsequent term.

**7. Criminal law ⬦⟶589(5), 867—Refusal to withdraw case from jury and grant continuance because of demonstration in courtroom held not erroneous.**

In a rape prosecution, where the court threatened to clear the courthouse unless the audience stopped a demonstration of approval of certain testimony, and instructed the jury not to be governed by any such demonstration or their own personal feelings, he did not err in declining to withdraw the case from the jury and refusing a continuance.

**8. Criminal law ⬦⟶1170½(5)—Refusal to permit cross-examination of prosecutrix as to contradictory statements in testimony held not reversible error.**

In a rape prosecution, refusal to permit cross-examination of prosecutrix as to contradictory statements in her testimony and to ask her which was correct held not reversible error, where she had already testified as to the matter, and the court, after sustaining the objection, propounded a question relative thereto, to which she replied that she did not remember and would not deny that she made such statements.

**9. Criminal law ⬦⟶401—Cross-examination of witness as to contents of note to another whose testimony was sought held permissible for impeachment purposes as against objection that written document was best evidence.**

Cross-examination of defendant's witness as to whether he and defendant wrote a note to another informing him as to what the witness was going to swear and that he wanted addressee to swear to the same held permissible as against the objection that the written document was the best evidence, being merely a collateral inquiry in the nature of impeachment.

⬦⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Witnesses** ⊖⪰330(1)—**Wide latitude permissible in cross-examination as to matters showing bias, interest, etc.**

A wide latitude, resting largely in the trial court's discretion, is permissible in cross-examination as to matters tending to show. bias, interest, prejudice, accuracy of statement or memory, and in impeachment.

**11. Criminal law** ⊖⪰400(5)—**Parol testimony as to family history available when relevant as best evidence.**

Under proper rules, parol testimony as to family history is available when relevant as the best evidence.

**12. Criminal law** ⊖⪰417(6)—**Testimony as to how old prosecutrix's sister said she was properly excluded as immaterial.**

In a rape prosecution, testimony as to how old prosecutrix's sister said she was *held* properly excluded as immaterial.

**13. Witnesses** ⊖⪰380(2)—**Cross-examination of defendant as to contradictory statements held competent for impeachment purposes.**

Cross-examination of defendant as to contradictory statements in the presence of others *held* competent for impeachment purposes, where the proper predicate as to admissions against interest was made and the witness was apprised of the time, place, and circumstances, persons present and the statement made, to prevent surprise and give opportunity for explanation.

**14. Witnesses** ⊖⪰389—**Testimony as to declarations denied by defendant properly admitted.**

Where defendant denied making certain contradictory statements or stated that he did not remember, witnesses were properly permitted to testify to such declarations.

**15. Criminal law** ⊖⪰815(5) — **Charge held properly refused as not requiring that finding be based on evidence.**

In a rape prosecution, an instruction that defendant would not be guilty if prosecutrix submitted and consented, unless he put her in fear of her life or great bodily harm, *held* properly refused as not requiring that the jury's finding be based on the evidence.

**16. Criminal law** ⊖⪰862—**Jury cannot act on independent knowledge of members.**

The jury cannot act on independent knowledge of its members, but must be governed by the testimony adduced on the trial.

**17. Criminal law** ⊖⪰815(1)—**Charge erroneously assuming absence of evidence on certain point properly refused.**

A charge erroneously assuming an absence of evidence on a point indicated is properly refused.

**18. Criminal law** ⊖⪰763, 764(24)—**Charge as to sufficiency of certain proof to create reasonable doubt as to matter in issue properly refused as invading jury's province.**

In a rape prosecution, a charge that proof that prosecutrix was of bad character would be sufficient to create a reasonable doubt as to her nonconsent was properly refused. as invading the jury's province.

Appeal from Circuit Court, Dale County; J. S. Williams, Judge.

Lemmie Riley was convicted of rape, and he appeals. Affirmed.

Charges 6 and 15, refused to defendant, are as follows:

"(6) The court charges the jury that, unless the defendant put the prosecutrix in fear of her life or of great bodily harm at his hands, the defendant would not be guilty of rape, if the prosecutrix submitted and consented to the act."

"(15) The court charges the jury that, if they believe from the evidence that Ida Barber is a girl of bad character, this would be sufficient to create in their minds a reasonable doubt as to the nonconsent of the prosecutrix to the sexual act."

H. L. Martin, of Ozark, for appellant.

The grand jury was dissolved at the end of the February term, 1922. The defendant had a right to be indicted by a grand jury legally drawn. Acts 1919, p. 534; Whittle v. State, 205 Ala. 639, 89 South. 43; Cullum v. Casey, 1 Ala. 351; Kidd v. Burke, 142 Ala. 625, 38 South. 241; Garlick v. Dunn, 42 Ala. 404; Gordy v. State, 154 Ala. 52, 45 South. 901; O'Byrnes v. State, 51 Ala. 25; Williams v. State, 61 Ala. 33; Caldwell v. State, 203 Ala. 415, 84 South. 272. The venire should have been quashed, because the court failed to make an order constituting the regular jurors drawn for the week a part of the special venire as the law requires. Acts 1919, p. 1041; Umble v. State, 207 Ala. 508, 93 South. 531. Confessions being prima facie inadmissible, the burden is on the state to establish competency by showing no improper influence. Carr v. State, 17 Ala. App. 539, 85 South. 852; 4 Mich. Ala. Dig. 236; Whitehead v. State, 16 Ala. App. 427, 78 South. 467; 13 Cyc. 700. The indictment being found by a grand jury not authorized by law, defendant was entitled to the affirmative charge. O'Byrnes v. State, supra.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The act of 1915 governs, and the grand jury which had been drawn during the term was a legal grand jury. The latter act merely fixes the time of *holding* court. Acts 1915, p. 707; Acts 1919, p. 534; Whittle v. State, 205 Ala. 639, 89 South. 43; Caldwell v. State, 203 Ala. 412, 84 South. 272. There was no prejudice to defendant through the declination of the court to constitute regular jurors for the week defendant was tried. Umble v. State, 207 Ala. 508, 93 South. 531. There is a wide latitude in the cross-examination of witnesses, resting largely in the

---

⊖⪰For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

discretion of the court. 4 Mich. Ala. Dig. 168; 14 Mich. Ala. Dig. 1148. If the attention of the witness is called to the time, place, circumstances, persons involved, and statements made, the rule as to impeachment is satisfied. Burton v. State, 194 Ala. 2, 69 South. 913; People's Shoe Co. v. Skally, 196 Ala. 349, 71 South. 719. Charge 6 does not require the finding of the jury to be based on the evidence in the case, and was properly refused. Edwards v. State, 205 Ala. 160, 87 South. 179; Davis v. State, 188 Ala. 59, 66 South. 67.

THOMAS, J. The trial was had on an indictment for rape.

[1] The Act of September 22, 1915 (Gen. Acts 1915, p. 707), provided that the circuit courts of the several counties of the state shall be open for the transaction of all business, or judicial proceedings, from the first Monday in January to and including the last Saturday of June of every year; and from the first Monday after the 4th of July to and including the last Saturday before Christmas Day of every year. Liverpool & London & Globe Ins. Co. v. Lowe, 208 Ala. 12, 93 South. 765; Engle v. Bronaugh, 208 Ala. 162, 93 South. 868; Cleveland v. Little Cahaba Coal Co., 205 Ala. 369, 87 South. 567; Clio Banking Co. v. Brock, 204 Ala. 57, 85 South. 297. As pertaining to Dale county, the foregoing general act was not repealed by the act approved September 23, 1919, providing that circuit court shall be held as follows:

"In the county of Dale, at Ozark, on the third Monday in February, and on the third Monday after the last Monday in July, and may continue two weeks at each term. * * * All laws and parts of law in conflict with this act be, and the same are hereby repealed." Gen. Acts 1919, pp. 534, 535.

It was permissible to pass such local law, notwithstanding the foregoing general law. Const. 1901, § 105.

The special session of the circuit court of that county was called on May 31, 1922, and its grand jury for the regular term that convened on the third Monday in February for "two weeks" was called to serve as the grand jury for the special term "so called" by the judge of that circuit. Under the act "to amend an act entitled 'an act to fix the time of holding the circuit court in the Third judicial circuit of the state of Alabama,' as amended and approved April 7, 1911" (Gen. Acts 1919, p. 534), the regular term of the circuit court in Dale county had not expired before May 31, 1922, when the special session was called and held, and at which the instant indictment of the defendant was returned.

Was the grand jury for said county (beginning on the third Monday in February, 1922, for the time or "term" of two weeks) available for the purpose for which the judge of the Third judicial circuit ordered it for the "special term" of the circuit court called for the date indicated in the order? The authority and power of the grand jury duly drawn and impaneled for the "February term" or call of that court, to act as a lawfully constituted grand jury for the special term and on the date of the return of the indictment, were duly challenged by defendant's plea in abatement, which was stricken on motion of the state and against objection and exception of the defendant. In Whittle v. State, 205 Ala. 639, 642, 89 South. 43, 45, it was said:

"* * * A grand jury once regularly impaneled is presumed to continue until dissolved by operation of law at the expiration of the term at which it is impaneled, or by an order of the court."

[2] The plea in abatement was permitted to be filed on June 5, 1922, after defendant had pleaded to the merits on May 31, 1922. This motion was not heard after plea of not guilty, as a matter of right to defendant, but as the result of the exercise of a sound discretion by the court. Before the plea to the merits had been interposed, such motion and the hearing thereof were available to defendant as a matter of right. Whitehead v. State, 90 South. 351, 206 Ala. 288. The court having exercised a sound discretion in the hearing, we will consider the ruling as if the plea in abatement had been interposed before defendant had pleaded not guilty to the indictment.

[3] In Caldwell v. State, 203 Ala. 412, 415, 84 South. 272, construing General Acts 1915, § 13, p. 812, and General Acts 1909, § 18, p. 312 it is declared:

"The grand juries so impaneled are such 'for that term of the court,' unless dissolved by order of the court. A grand jury, being a part of the court, can only be dissolved by operation of law or order of the court served by it. * * * A grand jury once regularly impaneled is, nothing to the contrary being shown, presumed to continue until dissolved by operation of law or order of the court."

Thus the grand jury of Dale county for the term of the circuit court, at which the call session of the court was had, expired by operation of the general law with that term, the last "Saturday of June," unless sooner discharged by the court, and such grand jury, not having been theretofore dissolved by law or discharged by order of the court, was available for the purposes disclosed in the subsequent order (that of May 31, 1922) of the court, calling that special term or session. The act of September 23, 1919, was merely to fix *the times* of holding court in the several counties of the Third circuit; such is its title, and embraced in the subject-matter of the act. The indictment of defendant was found by a duly organized and acting grand jury of Dale coun-

ty, and defendant's plea in abatement, etc., was without merit. Whittle v. State, infra; Caldwell v. State, supra.    This is true, though in the order of the judge calling the court for May 31, 1922, he says:

"It is further ordered that summons issue and be served *upon the grand jury*, such grand jury not having been discharged at the last regular *term* of such court, *and the same* having been held and being still the grand jury of said court."    (Italics supplied.)

This order could not be, said to have referred to the former term and grand jury that expired by operation of law on the "last Saturday before Christmas Day" of 1921. It could only refer to the *term* then existing when the order was made—that extending "from the first Monday in January (1922) to and including the last Saturday of June" of that year—and only to the grand jury for that term, which had been held after the spring term, as it is designated, of court beginning the third Monday in February and continuing two weeks.    There was no error in the foregoing rulings of the trial court.

[4] Of defendant's motion to quash the venire, it will be observed that the record shows the judge ordered the jury box brought into the courtroom and drew therefrom the names of 75 persons to constitute the jury for the trial of cases during the week in which defendant's case was set for trial. This drawing of the jury had been preceded by the order for the venire which the judge was to draw—the names of 75 persons for jury services.    This order was:

"It is therefore ordered that the sheriff bring into the courtroom of said county, at Ozark, the jury box for said county, and that the judge draw therefrom the names of 75 persons found therein to constitute the juries for the trial of cases during the week beginning Monday, June 5, 1922, and for transaction of such matters of business as may properly come before said court for its disposition. It is further ordered that this order be spread on the minutes of the court."

It was dated May 31, 1922, and signed by the judge of the Third judicial circuit. It is observed that in this order the court did not draw "regular jurors for the week" and "special jurors" for the trial of the defendant, as required by Acts 1919, § 32, p. 1040. Vann v. State, 207 Ala. 152, 92 South. 182. Of this the Attorney General says, in his argument:

"From a technical standpoint, this action of the court was erroneous for the reason that the statute requires the drawing of the regular juries for the week and special juries in cases of this nature."

The same irregularity, however, occurred in the case of Umble v. State, 207 Ala. 508, 93 South. 531, where it is said:

"In Whittle v. State, 205 Ala. 639, 642, 89 South. 43, it was held that a special venire for

the trial of a capital case should be composed of two 'different' elements, viz.: (a) The 'regular juries' drawn for the week the capital case is set; and (b) the special jurors drawn to afford the number for the special venire fixed in the order of the court. In declining, expressly, to draw any names of persons to serve as regular jurors for the week beginning January 24, 1921, the trial court was in error, thereby omitting the designation of one of the elements the law contemplates should contribute to constitute a 'special venire' in capital cases."

The court, in that case, demonstrated that no reversible error resulted from this omission, and concludes with the announcement:

"It, therefore, results that no prejudice to defendant attended the court's declination to constitute 'regular juries' for the week defendant was tried."

That is, to say, the conclusion there announced was that, where, in a capital case, the trial judge refused to draw *regular juries*, as well as *special jurors*, as required by the jury law, and instead drew 100 names with which to supply the venire of 90 *special jurors*, the error, did not operate to defendant's prejudice, "the names being drawn from the same jury box in any case." It results that under this authority there was no prejudicial error committed as to the venire as ordered, drawn, and constituting the special venire provided by law for the trial of the defendant under the indictment for a capital felony.

[5,6] Under the application for a change of venue in criminal cases, it is the duty of the judge of the court, in a fair and impartial way, from the application and the evidence offered in support of and against it, to ascertain whether the defendant can "reasonably be expected to obtain that fair and impartial trial at the hands of an unbiased and unprejudiced jury which the laws of every civilized community should accord to those charged with crime."    Under such motion, the burden is upon the defendant to show "to the reasonable satisfaction of the court that an impartial trial and unbiased verdict cannot be reasonably expected," and "if the trial judge comes to that conclusion, then the venue ought to be changed; if not, then it should not." Godau v. State, 179 Ala. 27, 60 South. 908; Seams v. State, 84 Ala. 410, 4 South. 521; Adams v. State, 181 Ala. 58, 61 South. 352. The same rule obtains as to an application for a continuance granted on the state of public feeling against a defendant. However, we do not believe that there was an abuse of judicial discretion in declining defendant's application on motion for a continuance of his case to a subsequent term of court.

Before the introduction of evidence, defendant moved the court for a continuance of the cause, because of certain publications appearing in the Montgomery Advertiser, the Montgomery Journal, and the Southern Star,

which were exhibited in the motion, and it was admitted that the foregoing articles appeared in said newspapers, and that each was circulated in Dale county and territory contiguous thereto. The publications so exhibited were, respectively, of dates May 30, and 31, June 1, 6, 7, and 8; the trial was begun on June 5 and the verdict rendered on June 7, 1922.

When the court had overruled the motion for a continuance, the defendant had duly and legally excepted, and the court had concluded his voir dire examination of the panel of jurors, at the request of the defendant, the court propounded the additional questions to the jurors, to wit:

"'Gentlemen, have you heard anywhere, in any newspaper, any article which would in any way affect or bias your verdict either for or against this defendant; in any paper published anywhere have you read any account of this alleged trouble which would tend to affect or bias your verdict in any way, in the event you are chosen as jurors in this case?' (None of the jurors respond to the foregoing.)
" 'Have you or any of you read the articles in any of the newspapers which recited an account of this affair?' 'Or an alleged account?' (Some of the jurors answer the above question affirmatively.)
" 'Would that in any way affect your verdict or prejudice the cause of this defendant?' (Said jurors state that it 'would not.)
" 'If any juror who stands before me would in any way be influenced by anything he has read, I ask him now to let it be known.' (No response to the above by any of the jurors.)
" 'Have you a fixed opinion as to the guilt or innocence of this defendant, from any cause?' 'Any of you?' (No response by any of the jurors to the above.)" Record, p. 18.

There was response by some of the jurors to some of the above questions. This was, in effect, a negative response as to bias from each juror called upon by the court to answer. When this was done, the defendant insisted that he should not be put to trial at said term of court, but *reserved no exception because his case was not continued.*

It is true that a number of newspaper articles were written with reference to the case, and that the general public was interested or aroused about the case; but it was not made apparent to the court that, aside from this general interest and discussion in the papers, the defendant could not have a fair trial by the jurors impaneled for his trial. Authorities have been collected in 4 Mich. Ala. Digest, p. 267, § 387, to the effect that the granting or refusing of an application for continuance is generally a matter within the sound discretion of the court. Knowles v. Blue, ante, p. 27, 95 South. 481.

[7] When the state had rested, defendant presented a motion, in writing, that the court withdraw the case from the jury because Dr. Reynolds had testified as a witness for the state, and, being cross-examined by defendant, this question was propounded:

"Doctor, I'll ask you if it's not a fact that after you came out of there you said to a big crowd out there, 'Arrest everybody that's had anything to do with the girl.'"

To which the witness answered:

"I possibly might have said that, and I still say that; I don't deny it."

Upon this answer there was a considerable demonstration in the courthouse—clapping of hands, stamping of feet— and to such an extent that the court stated that if the audience did not stop the disorder he would have the courthouse cleared, saying "that it was absolutely improper and would not be tolerated." Defendant argued that such demonstration in the courtroom was calculated to prejudice his case before the jury, and moved the court the case be withdrawn and "not submitted to the jury at this trial." Thereupon the court instructed the jury as follows:

"Gentlemen, I instruct you now, and shall repeat it, that you are to be governed in this case by the instructions of law which I shall give you from the bench and from the statements the witnesses furnish you from the stand. You are not to be governed by any demonstration of feeling which you may see on the part of anybody or by your own personal inclinations or feelings, but, as I have said, you are to be governed solely by the law as I give it to you and by the statements of the witnesses from the stand.
"I ask you now whether or not you have been influenced by anything which you have seen or heard other than what has come from the witness stand. I assume by your silence that you have not been influenced."

The court overruled the motion, and declined to withdraw the case from the jury, to which action the defendant accepted. There was no error in the foregoing rulings on the motions for continuance and discontinuance of the trial.

[8] Assignments of error are predicated on rulings of the trial court as to the method of cross-examination sought of prosecutrix —by attempting to confront her with contradictions in her testimony and asking her "which is correct." The witness had already testified of the matter embraced in the examination sought. Moreover, after the court sustained the State's objection, the court propounded a question which brought out the matter desired and on which the assignment of error is rested. If there had been error in the original ruling, the subsequent interrogation by the court to the witness and her answer, "I don't remember if I did. I am not going to say I didn't make it," were sufficient to show that no reversible error intervened in the ruling.

[9, 10] Defendant's brother (Hosea), having testified, was asked by State's counsel on

cross-examination, if he and the defendant did not write "a note" to Porter, a brother of defendant, "informing him as to what witness was going to swear in the case," and that he (witness) "wanted him (Porter) to be there to tell that and. to swear to it." There was objection on the ground that the question sought to bring out the contents of the written document of which it "was the best evidence." This was merely a collateral inquiry in the nature of impeachment, and was properly permitted.· 4 Mich. Ala. Dig., par. 247, p. 158; 14 Mich. Ala. Dig., §§ 190, 191, p. 1148. A wide latitude is permissible in cross-examination, resting largely in the discretion of the trial court, in matters tending to show bias, interest, prejudice, accuracy of statement or of memory, and in impeachment.

There was no error in the cross-examination of the witnesses Mrs. Cole and W. H. English. Such examinations were competent as shedding light upon the question of prejudice, bias, or interest of the witnesses. Ex parte State (Johnson v. State), 199 Ala. 255, 74 South. 366; Whitsett v. Belue, 172 Ala. 256, 54 South. 677; Houston Biscuit Co. v. Dial, 135 Ala. 168, 33 South. 268; Burger v. State, 83 Ala. 36, 3 South. 319; Underhill on Cr. Ev., § 222; 1 Greenl. on Ev. (15th Ed.) § 448. et seq.; 5 Jones on Ev. §§ 828, 901; 3 Ency. of Evidence, 849; 2 Ency. of Evidence, 407.

[11, 12] The witness Mrs. Sanders, having testified to her knowledge of the girl and her general character for purity and general reputation in the community where she lived, basing her answer on what she knew herself and what she had heard others say, testified that she "never did see anything wrong with her in particular," and yet taking into, account how she was considered by the people in the community, the witness further said "her character was pretty bad for chastity and virtue." On cross-examination, the witness stated that she had "heard a little talk about her," which was not "very bad." Thereupon, defendant, by her redirect examination, sought to prove that prosecutrix had a sister older than she was; that they had discussed their ages in witness' presence, and that "she (prosecutrix) said she was 12 last year." Thereupon objection was sustained at the instance of the State to the further question, "How old did her sister say she was?" Under proper rules long prevailing in this jurisdiction, family history is made available when relevant as the best evidence. Duncan v. Watson, 198 Ala. 180, 73 South. 448. However, the charge on which defendant was .being tried was rape, . and it was immaterial to that inquiry how old prosecutrix's "sister said she was." There was no error in this ruling.

[13, 14] Testimony for the purpose of impeachment of the defendant, by showing in his cross-examination that he had made contradictory statements in the presence of others, was competent. It is unnecessary to discuss in detail the several exceptions taken on this point. The proper predicate for the introduction of such testimony was made as to admissions against interest. Stone v. State, 208 Ala. 50, 93 South. 706. To the questions whether the defendant had made certain statements, he either denied making the same or stated that he did not remember. Thereafter witnesses were introduced by the state to testify to such declaration. This was in accord with the line of decisions pertaining to such procedure. Burton v. State, 194 Ala. 2, 69 South. 913; People's Shoe Co. v. Skally, 196 Ala. 349, 355, 71 South. 719. The rule requires that the witness be apprised of the time, place, circumstances, and persons present, and the statement made, to prevent surprise and to give opportunity for explanation. This was sufficiently complied with, and there was no error committed.

`.[15-18] Charge 6, requested by defendant, was properly refused for not requiring the finding of the jury to be based upon the evidence. The jury cannot act on independent, knowledge of the members constituting the jury, but must be governed by the testimony adduced on the trial. Davis v. State, 188 Ala. 59, 69, 66 South. 67; Edwards v. State, 205 Ala. 160, 162, 87 South. 179. Charge 7 was properly refused, for the assumption that there was an absence of evidence on the point indicated. Furthermore, it was confusing and misleading to the jury. Moreover, defendant's counsel confesses that charges 7 and 13 possess defects authorizing refusal of the same. Charges 13 and 15 invaded the province of the jury—the inference of fact to be drawn is for the jury, and not the subject of an affirmative instruction.

The affirmative charges requested were no doubt sought on the assumption that the grand jury finding the indictment was not a legal grand jury. This question we have discussed and decided adversely to defendant.

There was no error in overruling the motion for a new trial. We have carefully considered the affidavits submitted by the state, and are of the conclusion that the jury was not subject to any improper conduct, or in any way interfered with, or unduly influenced, either at the home of the sheriff, where they went for meals and for lodging, or at the courthouse-by the crowd attending the trial. Leith v. State, 206 Ala. 439, 90 South. 687.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.