232 So.2d 631

Robert BUTLER

v.

STATE of Alabama.

7 Div. 690.

Supreme Court of Alabama.

March 5, 1970.

Oscar W. Adams, Jr., U. W. Clemon, Demetrius C. Newton, Birmingham, Norman C. Amaker and Jack Greenberg, New York City, for appellant.

**390**

MacDonald Gallion, Atty. Gen., and
Herbert H. Henry, Asst. Atty. Gen., for
the State.

McCALL, Justice.

This case was argued orally before the entire court and was submitted on several motions and on the merits for a decision.

The appellant, a Negro male of mature adult age, was indicted for the rape of an unmarried white woman twenty years of age. He was tried and convicted by a jury which fixed his punishment at death.

An appeal was entered on behalf of the appellant at the conclusion of the trial by the court ex meru moto under the Automatic Appeal Act, Act No. 249, § 10, General Acts of Alabama, Regular Session, 1943, p. 217 et seq. Therefore we will consider carefully all of the evidence, even though no lawful objection or exception may have been made thereto, in order to determine if any testimony that was seriously prejudicial to the rights of the appellant was admitted, and whether the verdict of guilty is so decidedly contrary to the great weight of the evidence as to be wrong and unjust. No assignment of error is necessary to raise such questions. Tit. 15, § 389, Code of Alabama, 1940.

The evidence at the trial was that on the night of August 26, 1964, the victim was parked in an automobile with her date, a young man nineteen years of age. The location was on the hard surfaced recessed area of the wide shoulder adjoining the public highway coming off Lookout Mountain toward the city of Gadsden. It was in a heavily wooded section where there were no houses. While seated in the automobile around 11:15 p. m., four Negro men suddenly confronted the couple. One in the group of Negroes held a pistol at the neck of the young man and ordered him to get out of the automobile, which he did. As he straightened up after getting out, he was struck in the jaw and knocked across the automobile. Then he was dragged off the crest of the mountain about thirty feet where he was held subdued at pistol point, being threatened with death from time to time. The woman was dragged from the automobile by one of the men who put one

arm around her mouth to muffle her cries, and the other around her waist to pull her with him. While she was resisting her captors, she tripped and fell down the embankment from where the automobile was parked. There she first was sexually assaulted by the man who dragged her from the automobile. She identified the appellant, an older man, as the one who tore her clothes from her person and struck her in the face some three times before raping her. He held her down on the ground while the first Negro sexually assaulted her. The appellant then sexually assaulted her. Following these attacks, the first assailant then sexually assaulted her a second time. After this, a third Negro man in the group raped her. After about forty-five minutes, these attacks were completed and the group of Negroes ran into the woods. The victim made her way up the mountain and walked for some distance to the home of a married couple. She appeared there crying and in a highly emotional state, asking for help. She complained to this couple of being sexually attacked. That same night, about two hours later, she was examined by a physician who obtained a specimen of secretion from the reproductive organs of the victim's person. A microscopic examination of this specimen revealed the presence of multiple male spermatozoa, as well as large quantities of blood. The woman testified that on the night of the attacks, the moon was real bright, that she could see well, and that she could see the appellant. She identified him in a police line-up two days after the rape as being the second man who ravished her on the occasion. Five or six line-ups were held with about five men in each line-up. She picked the appellant out of the last one. Her companion made a voice identification of the appellant, after the latter repeated phrases he was given to speak. He also identified the appellant by the appearance of his hands and bare chest. The appellant sought to establish by several witnesses as an alibi that on the night in question they had seen him at particular times and at places so distant from the

scene that he could not have been present when the crime occurred about 11:15 p. m..

In the appellant's motion to quash the indictment and the amendments to the motion, his stated grounds are that Negroes were systematically excluded from the jury rolls and from the grand jury that indicted him on February 12, 1965, and that the said grand jury was not organized in accordance with the Supreme Court decisions, relating to Negro participation on state grand juries, all of which he contends were in violation of his constitutional rights, also that women were excluded from the grand jury and the petit jury, further, that Negroes were systematically included on the jury rolls and in the jury box of the county, and finally, that infliction of the possible death sentence upon conviction would constitute cruel and inhuman punishment. This motion was denied by the court and the ruling is now before us for review.

 Appellant implies by the allegations in his said motion, that the jury box must be filled with all of the qualified Negro male population in the county of twenty-one years and over. Such contention is not supported by the decisions of this court or of the courts of the United States. Fikes v. State, 263 Ala. 89, 81 So.2d 303, rev'd on other grounds 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246. Nor is a defendant in a criminal case entitled to demand a proportionate number of his race on the jury which tries him, nor on the venire or jury roll from which petit juries are drawn. Swain v. State, 275 Ala. 508, 156 So.2d 368, aff'd 380 U.S. 202, 208, 85 S.Ct. 824, 13 L.Ed.2d 759, reh. den. 381 U.S. 921, 85 S.Ct. 1528, 14 L.Ed.2d 442.

 While very decided variations in proportions of Negroes and whites on jury lists from racial proportions in the population, which are not explained and are long continued, have been held to furnish sufficient evidence of systematic exclusion of Negroes from jury service, the United States Constitution does not require an ex-

act proportion between the percentages of Negroes in the population and of those on the jury list, nor does it require that any particular panel of jurors in a criminal trial include members of the race of the accused person. Swain v. State, supra, Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692. It is required, however, that no qualified person be excluded from jury service because of race. Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074. "Excluded" means a systematic, purposeful non-inclusion based solely on race. Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839.

■ The burden of proof is on the person attacking selection procedure to show "the existence of purposeful discrimination" by the exclusion of Negroes on account of race from jury participation. Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599, Fay v. People of State of New York, 332 U.S. 261, 285, 67 S.Ct. 1613, 1626, 91 L.Ed. 2043. Purposeful discrimination may not be assumed or merely asserted. It must be proved. Swain v. State, supra. In the case at bar, there was no evidence introduced at the hearing or during the trial, that we can find from reading the record, which shows that the jury was not drawn from a fair cross section of the community, or which shows the variation, in percentages, between Negroes and whites on the jury list of the county. The motion to quash alleges that according to the 1960 Federal Census, the male population in Etowah County, twenty-one years and over, was 84.6 percent white and 15.4 percent Negro. The appellant states that the jury rolls contain less than five percent of the names of the total of the Negro males eligible for jury duty, but he neither alleges or proves anything with respect to what percent of the eligible white male population is on the jury roll, so that the variation in proportions of Negroes and whites on jury lists from racial proportions in population can

be ascertained. We therefore find that the appellant failed to meet the burden of proof cast on him to establish discrimination. Swain v. State, supra, 16A C.J.S. Constitutional Law § 540, pp. 467–474. This ground of appellant's motion to quash the indictment was properly overruled. Taylor v. State, 249 Ala. 130, 30 So.2d 256; Shine v. State, 44 Ala.App. 171, 204 So.2d 817; 24A C.J.S. Criminal Law § 1787, p. 360.

■ Next appellant argues that he was deprived of due process of law and the equal protection of the law as guaranteed by the United States Constitution because women were excluded from the grand jury that indicted him and from the petit jury that tried him on April 13 and 14, 1965. This question has already been decided adversely to the appellant in our decisions of Philpot v. State, 280 Ala. 98, 190 So.2d 291, and Beverely v. State, 281 Ala. 325, 202 So.2d 534, which hold that a defendant in a criminal case who is not a member of the group which he contends has been illegally excluded from jury service, is in no position to say that he has been denied a jury of his peers. In addition, White v. Crook, D.C., 251 F.Supp. 401, holding unconstitutional the Alabama statute excluding women from jury service, was not decided until February 17, 1966, which was after the appellant's trial and conviction. The court expressly provided in that decision that it should have no retrospective effect. Taylor v. State, 282 Ala. 673, 213 So.2d 836; Swain v. State, Ala.Sup., 231 So.2d 737[1] (decided February 5, 1970); Juelich v. United States, 5 Cir., 403 F.2d 523.

■ The appellant complains that the trial court abused its discretion in not granting him a continuance because of newspaper publicity given racial disturbances, and demonstrations by Negroes allegedly throughout Alabama, particularly at Selma and the counties adjoining thereto. No evidence was offered, in point of

1. Ante, p. 292.

time, as to when these conditions existed, if at all, with relation to the date of appellant's trial. No evidence was offered before or at the appellant's trial, or subsequently, on motion for a new trial that the general public in Etowah County was so adverse to the Negro race that the appellant could not or did not receive a fair and impartial trial. No atmosphere of ill will, prejudice, passion, violence, harm or threats of harm, or reports thereof, local or widespread, was shown by any evidence to have existed against the appellant or his race as a result of any news publicity. The burden was on the appellant to prove to the reasonable satisfaction of the court that an impartial trial and unbiased verdict could not be reasonably expected. Riley v. State, 209 Ala. 505, 96 So. 599, Goldin v. State, 271 Ala. 678, 680, 127 So.2d 375.

Had the appellant's attorneys sensed such a condition, they should have probed into the matter on the voir dire examination of the jury panel and of the individual jurors. Then again, when the jurors were being impaneled, the trial court evidently ascertained from them, under oath, the statutory requirements that they had no fixed opinion as to the guilt or innocence of the accused, and would render a true verdict according to the evidence. Collins v. State, 234 Ala. 197, 174 So. 296.

■ It is settled law that the matter of a continuance rests in the sound discretion of the trial court, and its ruling will not be disturbed unless a gross abuse of the court's prerogative is shown. Goldin v. State, supra; Smith v. State, 282 Ala. 268, 210 So.2d 826; Hendricks v. State, 281 Ala. 376, 202 So.2d 738; Divine v. State, 279 Ala. 291, 184 So.2d 628, and additional cases—6A Ala.Dig., Key 583, p. 76. The trial judge was an on-the-scene observer, and after reviewing the record and noting the complete candor and care which he exercised while presiding over the trial and in going about securing the appellant's rights, we will not say, without evidence, that he put the appellant to trial in an atmosphere prevalent with prejudice and bias. There is nothing in the facts of this case to show any abuse of discretion on the part of the trial court to warrant a reversal for denying the motion to continue the case.

■ Two of the attorneys for appellant have made separate ex parte affidavits to the effect that at the voir dire examination of prospective jurors in this case, several jurors were excused by the State on the ground that they were opposed to the death penalty. They seek to have these affidavits made part of the record or as addenda thereto and to have the court treat them as conclusive evidence of what took place on the voir dire qualification of jurors. Appellant would then have us hold that some unnamed jurors bore conscientious scruples against the death penalty and were excluded for cause from service on the jury panel. The record containing the transcript of evidence, was filed in this court on August 22, 1969. Neither the record nor the transcript of evidence contains any matter concerning the voir dire examination of prospective jurors. The affidavits in question were filed on January 13, 1970, four years and nine months after the trial. This court is bound by the contents of the record. James v. State, 246 Ala. 617, 21 So.2d 847; Taylor v. State, 249 Ala. 130, 30 So.2d 256; Griffin v. State, 30 Ala. App. 194, 2 So.2d 921; Lokos v. State, 278 Ala. 586, 591, 179 So.2d 714. Ex parte affidavits of the nature in question cannot be made a part of the record and therefore cannot be considered by the court. Ragsdale v. State, 134 Ala. 24, 35, 32 So. 674; Lewis v. State, 42 Ala.App. 166, 169, 157 So.2d 38.

■ The appellant argues that under Alabama law, Tit. 14, § 395, Code of Alabama, 1940, the jury has unlimited, undirected and unreviewable discretion in determining whether the death penalty shall be imposed, with no legal or uniform standards for making this determination being set forth "by statute, judicial decision, administrative or executive pro-

nouncement," and without the accused having an opportunity to present circumstances in extenuation or mitigation, which therefore constitutes the punishment cruel and inhuman. He also attacks the single verdict procedure, whereby the jury ascertains the guilt of an accused, as well as the punishment to be imposed. The appellant contends that because of these objections § 395, supra, is unconstitutional. The statute provides as follows:

"Any person who is guilty of the crime of rape shall, on conviction, be punished, at the discretion of the jury, by death or imprisonment in the penitentiary for not less than ten years."

The appellant's argument is fully answered by the opinion of this court in Swain v. State, Ala.Sup., 231 So.2d 737[2] (decided February 5, 1970); Seals v. State, 282 Ala. 586, 596, 213 So.2d 645; Taylor v. State, 282 Ala. 673, 678, 213 So.2d 836.

In Taylor v. State, supra, the court also held:

"In so far as we are advised, the Supreme Court of the United States has not up to the present time held that a death sentence is 'cruel and unusual punishment' or that a statute which authorizes the imposition of the death sentence for murder is unconstitutional. See Witherspoon v. State of Illinois, 391 U. S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, decided on June 3, 1968. Also see Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, decided on June 3, 1968; Seals v. State, 282 Ala. 586, 213 So.2d 645, decided on August 15, 1968; Boykin v. State, 281 Ala. 659, 207 So.2d 412."

See also Boykin v. State, 281 Ala. 659, 661, 207 So.2d 412, 414, where the court said:

"Punishments are cruel when they involve torture or a lingering death; but the punishment of death is not cruel, within the meaning of that word as used in the Constitution. It implies there something inhuman and barbarous, and something more than the mere extinguishment of life. Weems v. United States, 217 U.S. 349, 370, 30 S.Ct. 544, 54 L.Ed. 793; note 4 in State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 464, 67 S.Ct. 374, 91 L.Ed. 422.

"Any punishment declared by statute for an offense which was punishable in the same way at common law could not be regarded as cruel or unusual in the constitutional sense. * * *"

This case was reversed by the Supreme Court of the United States on other grounds. See Boykin v. State, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274.

The appellant's Proposition of Law No. X is as follows:

"The failure of the trial court to allow petitioner to underake [sic] discovery relative to the racially discriminatory imposition of the death penalty in rape cases violated petitioner's rights under the due process clauses of the Fourteenth Amendment to the Constitution of the United States."

The proposition was not argued in appellant's brief. Further, there is nothing in the record in this case of a discovery proceeding either on oral examination of witnesses, or on propounding written interrogatories, or pursuant to issuance of subpoenas duces tecum, or on motions to produce documents. There is no record of a request or a motion to have subpoenas issued, nor of a court order suppressing, striking or quashing any subpoenas.

The appellant assigns as a ground of his motion for a reduction of sentence, which was overruled and denied by the trial court, that convicted Negro defendants are discriminated against by juries who impose the death penalty against them, but not against white defendants when so convicted. He has attached as part of the record

a survey of rape convictions in the state which he contends shows that Alabama juries practice racial discrimination in favor of whites and against Negroes in capital sentencing for the crime of rape. The same issue raised here by the appellant was decided against him in our recent case of Swain v. State, ante, p. 292, 231 So.2d 737 (decided February 5, 1970); Maxwell v. Bishop, 8 Cir., 398 F.2d 138.

 There was no error in admitting into evidence the Astronomical Daily Calendar for August of 1964, found in the bound World Almanac Book of Facts for 1964, published by the New York World Telegram, Scripps-Howard Newspapers. Assignment of Error No. 1. The library custodian testified that the almanac was a standard book of facts and a most comprehensive source of miscellaneous information found in all libraries and many homes. This was in our opinion sufficient preliminary proof of authenticity to permit the introduction of the excerpt tendered by the state. Mobile & Birmingham R. R. v. Ladd, 92 Ala. 287, 9 So. 169; Law of Evidence in Alabama, McElroy, 2d Ed., Vol. 2, § 259.05, p. 275; 32 C.J.S. Evidence § 718, p. 1025, note 97; Tit. 7, § 413, Code of Alabama, 1940. Courts take judicial notice of things properly belonging to a standard almanac. 31 C.J.S. Evidence § 12, p. 837, note 49; 31A C.J.S. Evidence § 100, p. 148, note 55.

 We do not think the court abused its discretion in permitting the prosecution to closely cross-examine the witness, Dan Jelks, on his knowledge of road routes and distances in the area of the crime, Tit. 7, § 443, Code of Alabama, 1940, and to propound leading questions to him. Tit. 7, § 444, Code of Alabama, 1940. This point was raised by Assignment of Error No. 2, but was not argued by the appellant.

 There was no error (Assignment of Error No. 5) in the trial court's refusal to give appellant's requested written Charge VI, reading as follows:

"Now we do not have, as I said to the other jury today, majority verdicts in this State; some jurisdictions have majority verdicts, but we do not. It is required by our law that each member of the jury be convinced beyond a reasonable doubt before a verdict could be returned against the defendant. Each one individually and severally from the other must be convinced beyond a reasonable doubt and all agree upon the verdict rendered before it would be valid. Likewise, eleven of you may be in favor of an acquittal and only one man against it, but you could not return a verdict because the law requires it to be unanimous. That does not mean that you could acquit him, but summed up it means a mistrial unless all of the jury agree on the verdict."

The subject matter of this charge was covered by appellant's requested Charge VII which was given by the court, and the court likewise covered the law that jury verdicts must be unanimous in its oral charge. McDonald v. State, 165 Ala. 85, 51 So. 629; 6A Ala.Dig., Key 829, p. 610.

 The appellant's Proposition of Law No. V is that he was deprived of his constitutional rights by the admission of testimony based on a voice identification of the appellant made while he was in a line-up and without the assistance of counsel, citing United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 1199. The appellant has made no argument in his brief on this proposition or point of law. In Stovall v. Denno, supra, decided on June 12, 1967, the Supreme Court of the United States held that Wade, supra, and Gilbert, supra, affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel. In the case at bar, the line-up was held on or about August 28, 1964, and appellant's trial was had on April 13 and 14, 1965, all of which was prior to the Wade and Gilbert cases that

were decided by the Supreme Court of the United States on June 12, 1967. Therefore, these decisions have no retroactive effect on this case. Johnson v. State, 282 Ala. 584, 213 So.2d 644; Seals v. State, 282 Ala. 586, 604, 213 So.2d 645; Embrey v. State, 283 Ala. 110, 115, 214 So.2d 567.

The court has carefully considered the trial court's overruling and denying appellant's motion for a new trial. We likewise have considered appellant's other grounds for a reduction of sentence. All of the points so raised have been covered in this opinion. We find no error in the rulings of the trial court. We are of the further opinion that the verdict of the jury was amply supported by competent evidence and that no testimony seriously prejudicial to the rights of the appellant was admitted or that the verdict of guilty was contrary to the great weight of the evidence.

The judgment of conviction is therefore affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, MERRILL, COLEMAN, HARWOOD, BLOODWORTH, and MADDOX, JJ., concur.