254 So.2d 333

**Wheeler BILLINGSLEY, Jr.**

**v.**

**STATE of Alabama.**

**7 Div. 689.**

Supreme Court of Alabama.

June 10, 1971.

After Remandment Nov. 4, 1971.

Oscar W. Adams, Jr., Demetrius C. Newton, Birmingham, Norman C. Amaker, New York City, for appellant.

MacDonald Gallion, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

**636**

COLEMAN, Justice.

Defendant appeals from a conviction for rape and sentence of death. Defendant is one of three men charged with raping the prosecutrix on August 26, 1964, in Etowah County. The appeal of defendant's two companions are reported as follows: Butler v. State, 285 Ala. 387, 232 So.2d 631, and Liddell v. State, 287 Ala. 299, 251 So.2d 601, decided March 4, 1971.

The evidence is adequately stated in both *Butler* and *Liddell* and no useful purpose would be served by repeating it here again. The evidence is ample to sustain a verdict finding defendant guilty. The sufficiency of the evidence is not questioned.

The questions here presented have been considered and decided in *Butler* or *Liddell,* or both. Defendant's contentions are numbered as in his brief, but contention IV is considered last.

### I, II

Defendant argues that the court erred in denying defendant's motion to quash the indictment on the grounds that the grand jury which indicted defendant had been drawn from a jury roll from which negroes had been systematically excluded, and later included, and from which women had been excluded. Defendant's contentions are without merit as is held in *Butler* and *Liddell.*

### III

Defendant contends that the court erred in denying his motion for a continuance. This question is also considered in *Butler* and *Liddell* and is without merit for the reasons there stated.

### V, VI

Defendant contends that the death sentence imposed on him under Alabama law is unfair and illegal because the jury has unlimited and undirected discretion in deciding whether the death sentence shall be imposed. This contention is without merit as held in *Butler.* See McGautha v. California (Crampton v. Ohio), 402 U. S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711, decided May 3, 1971.

### VII

Defendant contends that the judgment should be reversed because the issue of guilt or innocence and also the punishment were determined by the same jury in a single trial. This contention was decided against defendant in *Liddell.* The question has been put to rest by the opinion in *McGautha,* supra, where Crampton had been convicted and sentenced to death by the same jury in one trial. The Supreme Court of the United States said:

"In light of history, experience, and the present limitations of human knowl-

edge, we find it quite ·impossible to say that committing to the untrammeled discretion of the jury the power to pronounce life or death in capital cases is offensive to anything in the Constitution. . . .

". . . . . . . . .

"The procedures which petitioners challenge are those by which most capital trials in this country are conducted, and by which all were conducted until a few years ago. We have determined that these procedures are consistent with the rights to which petitioners were constitutionally entitled, and that their trials were entirely fair. Having reached these conclusions we have performed our task of measuring the States' process by federal constitutional standards, and accordingly the judgment in each of these cases is

*"Affirmed."*

## VIII

■ Defendant's contention that death is cruel and unusual punishment is answered in *Butler*.

## IX

■ Defendant contends that he was not permitted to undertake discovery, referring it seems to the quashing of a subpoena duces tecum to the clerk of every circuit court in Alabama. This contention is sufficiently answered in *Liddell*.

## IV

Defendant contends that certain members of the jury venire were challenged for cause and excused by the court because of their beliefs with respect to capital punishment, contrary to Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.

Audograph recordings of the qualifying questions propounded to the jurors and their answers have been sent to this court together with an affidavit made by the court reporter. This affidavit appears to be substantially the same as the court reporter's affidavit which is referred to in the opinion in *Liddell*.

The recordings have been played and replayed here. Most of the questions and statements made by the court can be understood but many answers and statements made by jurors cannot be understood at all, and other answers and statements by jurors can be understood only with considerable difficulty. Apparently the jurors were not close to the microphone. We do not approve the method which has been employed to report the proceedings to this court in the instant case.

A transcript of the recordings has been made here as accurately as our facilities permit. Side 3 appears to contain the following recital:

"Do you believe in capital or penitentiary punishment? Answer yes or no.

"Yes, sir, I do not believe in capital punishment. For what . . . ."

It seems that the question was asked by the court and answered by a juror, but the name of the juror is not understood.

Later on Side 3 comes the following recital:

"All right the information of counsel I would like to know whether this is an appropriate time to—we would like to challenge Mr. Ayres under Section 55, Title 30. Now, you have asked that for general information."

Side 4 appears to contain the following:

"ROBERT L. RICHARDSON, Jr.
"How old are you Mr. Richardson?

"43.

"And where do you live Mr. Richardson?

"I live in Gadsden.

"And you are employed where:

"Pharmaceutical salesman. . . . . Corporation.

"And have been for how many years?

"16 years.

"Are you married or single?

"Married.

"How many children?

"3.

"Do you know the defendant, Wheeler Billingsley, Jr.?

"No.

"To your knowledge do you know any member of his family?

"Well, I think I know his father.

"Do you understand that capital punishment in the State of Alabama is by death in the electric chair?

"Yes.

"Do you believe in capital punishment?

"I do for murder.

"I would like at this time if the court please to challenge Mr. Richardson.

"Mr. Richardson, just a moment please, the charge in this case is not murder but rape. Did I understand you to say that you do not believe in capital punishment for rape?

"Right.

"Any questions along that line gentlemen?

"The gentleman is challenged for cause but you will have to wait until we get the list back . . . .

"All right."

On Side 6 appears the following:

"Who do we have next?

"The next person is Mr. Robert L. Richardson, Jr.

"He has been challenged for cause. We did not take him off the list because . . . .

"Yes sir.

"That's all right. Sorry."

On Side 7 appears the following:

"Have I called Mr. Jessie Ray Richardson?

"I did call you, yes.

"And Mr. Robert Richardson, also? Haven't I?

"He has been challenged.

"Oh, I see."

In this situation, the procedure followed by this court in Jackson v. State, 285 Ala. 564, 234 So.2d 579, and in *Liddell* is due to be followed, to wit:

"Accordingly, this case is remanded to the lower court with instructions that a hearing be conducted with the appellant and his attorneys present, and those jurors who were excused upon challenge because of their affirmative answers to the general question as to a fixed opinion against capital punishment, be summonsed and examined.

"This examination should be directed toward determining whether or not they could, in view of their affirmative answers as to having fixed opinions against capital punishment, nevertheless consider the evidence and instructions of the court and return a verdict of guilty although that verdict could result in a death penalty, if they, being the triers of fact were convinced of the guilt of the accused, and that the facts warranted a sentence of death.

"The court is further instructed that this hearing be conducted as speedily as is feasible, that a full record be made thereof, a transcript of such record be

made, together with the court's conclusions from the evidence adduced, and that a transcript of these proceedings under the seal of the clerk, be promptly forwarded to this court." (285 Ala. at 571, 234 So.2d at 586)

Remanded for further proceedings in accord with this opinion.

LAWSON, SIMPSON, MERRILL, HARWOOD, BLOODWORTH and Mc-CALL, JJ., concur.

HEFLIN, C. J., concurs in result.

AFTER REMANDMENT.

COLEMAN, Justice.

On original deliverance this cause was remanded with instructions that a hearing be conducted and those jurors, who were excused because of their affirmative answers as to their opinions against capital punishment, be summoned and examined. Further instruction was that the examination should be for the purpose of determining whether or not the excused jurors could, in view of their affirmative answers, nevertheless consider the evidence and instructions of the court and return a verdict of guilty, although that verdict could result in the death penalty, if they were convinced of the guilt of the accused and that the facts warranted a sentence of death.

After remandment, the trial court undertook to hold a hearing pursuant to the instructions. It is proper to note at this point that the judge who originally tried the case is no longer a state judge, and the person who was the court reporter on the trial has not been a state court reporter for several years and his present whereabouts are unknown to the trial court.

So far as we can ascertain, when the trial court examined the jury venire as to their qualifications, the court reporter did not take down in shorthand or stenotype the questions to or answers of the jurors. It is certain that we do not have before us any transcription of the evidence taken on qualification of the jurors. It is only fair to the trial court and the court reporter to state that, at the time this case was tried, the law as we knew it did not require that the qualifying questions and answers to jurors be transcribed unless some objection was made during the qualification. See: Title 15, § 380; Supreme Court Rule 25; Davis v. State, 259 Ala. 212, 66 So.2d 714; and Seals v. State, 271 Ala. 142, 122 So.2d 513. Since the trial, the law has been changed by the Supreme Court of the United States in its decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776.

In the recent case of Beecher v. State, 1971, 287 Ala. ——, 256 So.2d 154, this court said:

". . . . Therefore, we find ourselves in the position of being aware that the Supreme Court of the United States will not permit the imposition of the death sentence unless an affirmative showing is made in the record that the requirements of *Witherspoon* have been met. . . . ."

In the case of Liddell v. State, 1971, 287 Ala. 299, 251 So.2d 601 this court said:

"Further, in *Witherspoon*, supra, the court made it clear, in footnote 22 to the opinion, that the doctrine was to apply retroactively.

". . . . . . . . .

"*After Remandment*

"However, in the hearing below it was shown that the juror Herman Williams had died prior to the hearing.

". . . . . . . . .

"Regardless of what might be our views, we are bound by the decisions of the Supreme Court of the United States on matters involving federal questions. Howard v. Davis, 209 Ala. 113, 95 So. 354; State v. Curran, 220 Ala. 4, 124 So.

909; Opinion of the Justices, 278 Ala. 412, 178 So.2d 641.

"... . . . . . . . . . .

"Regardless of our views as to the soundness of the *Witherspoon* doctrine, we are bound thereby, and must perforce reverse the judgment in this case because of the exclusion of the juror Herman Williams."

As stated on original deliverance in the instant case, the only record before us · of · the examination of jurors as to their qualifications was on Audograph recordings which contain many questions and answers which we cannot understand. Set out in the original opinion of this court are several extracts which appear to be questions to and answers by jurors which we understand to be on the recordings. It is clear that one or more jurors were excused because of their statements as to their beliefs as to capital punishment. We cannot say that the names of all the excused jurors can be understood from playing the recordings.

Set out in our original opinion is the answer of an unidentified juror on Side 3 that he does ". . . . not believe in capital punishment. For what . . . ." Later on Side 3, is the statement: ". . . . we would like to challenge Mr. Ayres under Section 55, Title 30." Mr. Jessie Ray Richardson is mentioned on Side 7.

Juror Robert L. Richardson, Jr. was challenged and, it seems, excused because he did ". . . . not believe in capital punishment for rape?" He was examined at length on the hearing after remandment. He testified that he had been a juror on the panel at the trial of the instant case. He testified as to his belief at the time of trial and the time of the hearing:

"A Well, my position was that I didn't - believe in capital punishment in the case of rape unless death incurred (sic) as the result."

He testified that he did believe in capital punishment for murder but not for rape.

He testified on examination by counsel for defendant:

"Q Mr. Richardson, you say that under the facts that any—are there any conceivable sets of facts in a rape case that you would consider the death sentence?

"A No.

"Q And you reached those conclusions about how you felt the day of the Wheeler Billingsley trial, is that not correct?

"A I'd say that is when I first thought about it.

"... . . . . . . . . .

"Q I will ask you another question along that same line, Mr. Richardson. If the Judge instructed you in this particular case, if you happened to have been on the jury to consider both the life as well as the death penalty in this particular case, would you so consider it, both of those alternatives?

"A May I ask a question before I answer that?

"Q Yes, sir.

"A You mean after we had established guilt or innocence?

"Q Yes, sir.

"THE COURT: Mr. Richardson, it is the duty of the jury, first, to consider guilt or innocence.

"Q Yes, sir, I am assuming that they have returned—they have established guilt in this case and the Judge says, 'You are entitled to consider the death penalty or life imprisonment'. Would you consider both of those alternatives? If he so instructed you?

"A Not both of them.

"Q Which one would you consider?

"A Only the life.

"Q In other words, if he told you to consider it in such case you would refuse

to do so—not give it, just consider it, and not just—

"A   Sure, I could consider it.

"Q   All right.   But, you wouldn't give it—you would consider it, is that what you are saying?

"A   Right.

"Q   If he so instructed you.

"A   (Witness nods head in the affirmative.)

"Q   Let me ask you a question which is always a concern to me about these cases. Have you ever had a fixed opinion in your lifetime, Mr. Richardson, which you thought very certainly that you would hold forever, and then, change your mind?

"A   You say have I ever?

"Q   Yes, sir.

"A   I'm sure I have.   I can't recall just what, but—yes, sir.

"Q   Well, I assume that you at one time when you answered these questions, you thought you would always consider giving the death sentence in a murder case, but you have changed your mind, haven't you?

"A   Right.

"Q   So, let me ask you this question. You really can't be certain in this case, then, Mr. Richardson, even though you answered back in '65 as such, that when you got on this jury and listened to the evidence, you still might not have changed your mind, can you?

"A   Can't be certain.

"       .   .   .   .   .   .   .   .

"Q   Mr. Richardson, if you were sitting on the jury in this case, rape case, and you listened to what the other jurors were saying—I assume that—have you ever been on a jury since that time?

"A   (Witness shakes head in the negative.)

"Q   Never have?

"A   Never have.

"Q   When you listened to—you do understand that when you are on a jury, you listen to views of all of the jurors about different things before you make a decision, is that right?

"A   Right.

"Q   All right, assuming that there were other jurors on this particular panel who would avocate (sic) the death sentence, would you listen to what they have to say and consider it?

"A   Yes.

"Q   All right.   Mr.—

"THE COURT: Would it change your opinion?  Would their opinion change your mind?

"A   I don't know—

"       .   .   .   .   .   .   .

"Q   What did you say?

"A   Which question?

"THE COURT: When I asked you if it would change your mind, what other jurors said.

"A   I don't think so.

"Q   But you are not certain?

"A   Can't be certain."

The witness, in answer to the question: "Do you know of any other jurors in this case that were excluded—," testified: "A I wasn't the only one."

"Q   All right, do you know the names of any others?

"A   No, but I can remember one specific man just a row behind me that said almost the same thing—

"THE COURT: Now, Mr. Rayburn, you object to that?   That is outside of the realm—

"MR. ADAMS: Judge, I—

"THE COURT: —not only that, there is higher and better evidence. I sustain it."

The witness testified further:

"A  Judge, I do remember one other man.

"THE COURT: You don't know why he was excused, do you?

"MR. ADAMS: He said it was—

"THE COURT: What was it?

"A  When he was asked if he believed in the death penalty, he said not in a rape case."

No other witness was examined at the hearing after remandment. On the hearing, Juror Robert L. Richardson testified in the beginning that he did not believe in capital punishment unless death ensued. Near the end, he testified that he did not think the opinion of other jurors would change his mind but he did not know and he could not be certain.

Whether other jurors were excused on account of their statements that they did not believe in capital punishment we cannot say with reasonable satisfaction on the evidence now available to us. The rule, as we understand it, is that the burden is on the State to show affirmatively that the jury was not ".  .  .  .  chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. .  .  .  ." (391 U.S. at 522, 88 S.Ct. at 1777.) As we understand the record before us, the State has not carried the burden imposed by *Witherspoon,* and the judgment is reversed and the cause remanded for another trial.

Reversed and remanded.

HEFLIN, C. J., and LAWSON, MERRILL, HARWOOD, BLOODWORTH, MADDOX, and McCALL, JJ., concur.