290 So.2d 668

**Frank WILLIAMS**

v.

**STATE.**

**8 Div. 434.**

Court of Criminal Appeals of Alabama.

Dec. 4, 1973.

Rehearing Denied Jan. 2, 1974.

James M. Gaines, Huntsville, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Jonathan Prince Gardberg, Sp. Asst. Atty. Gen., Mobile, for appellee.

HARRIS, Judge.

Appellant was convicted of robbery and his punishment fixed at twenty-five (25) years imprisonment in the penitentiary. At arraignment he interposed a plea of not guilty and was represented by counsel of his choice. He did not give notice of appeal at the time of sentencing but filed

written notice of appeal within the time allowed by law. He filed an affidavit of indigency and the trial court granted him a free transcript. He is represented on appeal by the lawyer who represented him during his trial.

On May 23, 1971, a grocery store, owned and operated by a white woman in a predominately black community of Huntsville, was robbed by a tall slender black man carrying a pistol. There was no mention to exclude the state's evidence, nor was there a motion for a new trial. There was a request, in writing, for the affirmative charge with hypothesis. We will, therefore, undertake a recitation of the testimony and evidence reflected by the record.

The owner of the store was Mrs. Geneva Cryer. It was a small store and stayed open on Sundays. May 23, 1971, fell on Sunday. Her son, Jim Cryer, operated the store on this occasion while his mother, father and another member of the family made a trip to Fayetteville, Tennessee. They returned before 5:00 that afternoon and Mrs. Cryer relieved her son at the store.

Jim Cryer testified that he saw appellant in the store three times on that Sunday before his mother returned to the store. He made a positive in-court identification of appellant as the person who came into the store three times that day.

Mrs. Geneva Cryer testified that after her son left she started waiting on several customers in the store; that all the customers left except an elderly colored woman who was at the drink box filling up a hand carton of soft drinks. While she was selecting the drinks, Mrs. Cryer walked to a bathroom in the rear of the store to wash her hands. After completing her ablutions, she opened the door and saw a tall slim black man walking toward her at a fast gait. She saw him in the store a few minutes before she went to the bathroom. He pointed a pistol at her and said, "I have come after the money this time." He forced Mrs. Cryer back into the bathroom. Mrs. Cryer screamed and the man pointed the pistol directly at her and said, "I want your money." She told him she did not have any money—that it was in the cash register. The man locked her in the bathroom by using an outside latch. A few seconds later, she heard the cash register open. She peeped through a hole where a lock was in place at one time and saw the man leaving the store and putting something under his shirt. She forced the latch and rushed out to find the cash register open and all the currency gone. The money in change was not taken. She said she had approximately $477.00 in currency in various denominations. She ran outside and saw two men and the woman, Sadie Petty, who had been selecting the soft drinks, and exclaimed that she had just been robbed and asked them in which direction the man with the blue shirt went. They replied, "There he goes", and she saw him running north on Mitchell Drive. The store was situated at the intersection of Holmes Avenue and Mitchell Drive. She then called the Police Department and reported the robbery.

A police officer, J. C. Brooks, came to the store in a matter of minutes and got a description of the robber from Mrs. Cryer. An A.P.B. (all-points bulletin) was broadcast over the police radio and the hunt began. Officer Brooks saw a man named Felton Williams near the Cryer store. He told the officer that he knew appellant and he agreed to take the officer to the place where appellant was living. He told him the appellant's name was Frank Williams, Jr., Mr. Cryer went with them. Appellant was not at home. While cruising around, Felton Williams recognized appellant driving in his automobile with another individual in the car with him. Officer Brooks told Mr. Cryer and Felton Williams that it would be best for them to get out of his car and he would go alone to overtake appellant.

Officer Brooks was driving an unmarked patrol car but it was equipped with a siren. When he got fairly close to appellant, he turned on the siren and appellant pulled over and stopped. The officer

got out of his car and announced in a loud voice that he was J. C. Brooks, a detective with the Police Department, and ordered the occupants of the other car to get out and stand beside the car. He radioed his position and called for help. A well-marked patrol car with blue lights flashing approached from the opposite direction. Appellant made a move as if he was getting out of his car, changed his mind and sped away. Officer Brooks fired two shots at the fleeing car. The approaching patrol car stopped and two officers in uniform got out and attempted to flag down appellant, but he ran around them and went into overdrive. Officer Brooks got back into his car, radioed all patrol units, giving the direction appellant was driving. Four or five units responded and a high-speed chase was underway. Appellant was driving so fast that he lost control and wrecked his car. He abandoned his car and ran into a wooded area where the undergrowth was so thick he could hide almost any place and escape detection. A dog unit was called to the scene and one of the dogs found appellant lying underneath some thick honeysuckle vines. The dog barked and then bit him. The officers ordered appellant to come out but he decided that he preferred to stay with the ferocious dog and the officers were forced to go in and drag him out. He was "patted down" and found to be unarmed. In his right front pants pocket the police found $228.00 in U.S. currency, a taxicab driver's permit issued to Frank Williams, Jr., a small knife, and seven .22 caliber cartridges. One of the officers re-entered the bushes and found a .38 caliber pistol on the ground at the place they first spotted appellant. The pistol was loaded with six rounds of live ammunition. Appellant was handcuffed and carried to the hospital where he was given a tetanus shot, after which he was carried to jail.

Mrs. Cryer made an in-court identification of appellant.

Sadie Petty testified that a little after 5:00 on that Sunday afternoon, she went to the store to get a case of drinks. Mrs. Cryer waited on a number of customers and they left the store. At this time no one was in the store except her and Mrs. Cryer. While Mrs. Cryer was in the bathroom, she saw this black man walking fast toward the rear of the store. She saw Mrs. Cryer open the bathroom door and start out. The black man pushed her back into the bathtroom and she heard Mrs. Cyer scream. She saw the bathroom door open again and the black man peeped out and she got a glimpse of a pistol in his hand. She walked out of the store and told two elderly colored men that something was wrong inside the store. About this time, the tall black man came out of the store and walked right by them and went down Mitchell Drive. When he reached the Negro cab stand, he started running. In court Sadie Petty said appellant looked exactly like the man who had pushed Mrs. Cryer back into the bathroom.

After the transcript of the record was filed in the clerk's office, appellant's counsel filed an objection to the transcript in the form of an affidavit. The transcript reflects the following:

## "OBJECTION TO TRANSCRIPT

"Comes the Defendant and pursuant to Section 827 (1a) of Tit. 7, Code of Alabama 1940 (Recomp.) files this objection to the transcript of evidence which was filed in this cause on March 15, 1973.

"Defendant alleges that an objection to a portion of the state's closing argument has been omitted from the transcript. During the State of Alabama's final jury argument by Mr. Loftin, as Assistant District Attorney, the following occurred, to wit:

"Mr. Loftin: 'Now you have heard Mr. Gaines talk about reasonable doubt. Let me tell you the difference between this case and his example. In his example the little boy denied throwing the rock through the window but in this case no one has denied doing it.'

"Mr. Gaines: 'Now your honor we object to that. May we approach the bench? (At the bench) Now your honor we object to Mr. Loftin's argument. In my argument I gave an example of reasonable doubt. I gave an example of a little boy who was accused of throwing a rock through a window but he denied doing it. Now Mr. Loftin just said the difference between my example and this case is that no one has denied he did it. We object to that.'

"Court: 'Well, to tell you the truth, I didn't hear what he said.'

"Mr. Gaines: 'Well, we object to it your honor.'

"Court: 'I just didn't hear it.'

"This objection to the transcript will be called to the attention of the trial court, the Hon. Tom Younger on the 12th day of April, 1973, at 2:00 P.M.

"/s/James M. Gaines

. Attorney for Defendant

"Before me, David Rodgers, a notary public in and for the county of Madison, State of Alabama, personally appeared James M. Gaines, who being duly sworn, doth depose and say: That he has personal knowledge of the facts set forth in the foregoing objection to transcript, and that the same are true and correct to the best of his knowledge and belief.

"/s/James M. Gaines

Affiant

"Subscribed and sworn to before me on this the 26th day of March, 1973, by said affiant.

"/s/ David H. Rodgers

Notary Public

"I, the undersigned, do hereby certify to the court that a copy of the foregoing motion was this date served upon Hon. Fred Simpson, District Attorney, by placing a copy thereof in the United States mail, properly addressed, with postage prepaid.

"This the 26th day of March, 1973.

"/s/James M. Gaines

Attorney for Defendant

"FILED: MARCH 26, 1973

\* \* \* \* \* \*

"ANSWER TO OBJECTION OF TRANSCRIPT

"Comes now the State of Alabama in Answer to the Objection to Transcript filed in the cause of State of Alabama vs. Frank Williams, Jr., and through Mr. Bart Loftin, Attorney at Law and former Assistant District Attorney, does deny any recollection, memory, or knowledge that the alleged portion of the State's closing jury argument alleged as an omission from the transcript ever occurred at the trial of said cause in the final jury argument or at any other time in said trial.

"/s/Edgar W. Greene

"Before me, Mary Evelyn McCarty, a notary public in and for the County of Madison, State of Alabama, personally appeared Bart Loftin, who being duly sworn, doth depose and say: That he has no recollection, memory, or knowledge that the alleged portion of the State's closing argument to the jury alleged as an omission to the Transcript in the Objection to Transcript filed by Defendant's Attorney in the cause of State of Alabama vs. Frank Williams, Jr., ever occurred in the final argument to the jury by the State or at any other point in the trial of said cause.

"/s/Gordon B. Loftin

Affiant

"Subscribed and sworn to before me on this 3rd day of July, 1973, by said affiant.

"/s/Mary Evelyn McCarty

Notary Public

· "FILED: JULY 3, 1973

"ORDER

"THIS MATTER coming on to be heard on the 12th day of April, 1973, on Defendant's Objection to Transcript and the Court for good cause shown continues said hearing to allow the District Attorney adequate time to prepare and file an answer.

"This matter coming on to be heard on the 3rd day of July, 1973, on the sworn Affidavit of the Attorney for the Defendant, and on the sworn Affidavit of the District Attorney in his Answer to Objection to Transcript and on the Transcript previously filed with the Court, and the Court having considered the same, is of the opinion that the Defendant's Objection to Transcript is not well taken.

"It is, therefore, CONSIDERED, ORDERED and ADJUDGED that the Defendant's Objection to Transcript is overruled.

"This, the 27th day of July, 1973.

"/s/Thomas N. Younger

Circuit Judge"

█ Appellant, in brief, stated that if his objection to the transcript had been sustained and the omitted portion of the testimony had been included in the transcript, that reversible error would have occurred. This may be true but we are unable to respond to this asserted error. In all cases on appeal, the appellate courts are bound by the record upon which the appeal is rested, and such record may not be supplemented, impeached or contradicted by affidavits or otherwise by matters dehors the record. Teal v. State, 30 Ala.App. 109, 1 So.2d 316; Colburn v. State, 40 Ala.App. 248, 112 So. 2d 800; Butler v. State, 285 Ala. 387, 232 So.2d 631; Lewis v. State, 42 Ala.App. 166, 157 So.2d 38.

In Jefferson County it is the duty of the court reporter, in most cases, to transcribe the argument of counsel and include same in the transcript on appeal. At the present time in the other counties of the State, there is no such duty, except where objection is made. This case was tried in Madison County.

The trial court gave five written charges requested by the state and refused three. He gave eight written charges requested by appellant and refused twelve.

█ The evidence pointing to the guilt of appellant was overwhelming. In such situation the practice of the state requesting written charges should be discouraged. If the state persists in this practice then someday, maybe, an appellant is going to be grateful for a "built in" error on appeal.

The trial court charged the jury explicitly upon every principle and facet of the law applicable to this case. The oral charge was full, comprehensive and complete. Had the court refused *all* written instructions, no error would have intervened. "The refusal of a charge, though a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of the parties." Title 7, Section 273, Code of Alabama 1940; Garrett v. State, 268 Ala. 299, 105 So.2d 541; Cooper v. State, 277 Ala. 200, 168 So.2d 231; Kemp v. State, 278 Ala. 637, 179 So.2d 762.

Appellant was accorded a fair and impartial trial in keeping with his constitutional guarantees. He was represented in the court below, and here, by an able, resourceful and conscientious lawyer. This was all he was entitled to, or could expect, under the law and our adversary system.

We have carefully examined and studied this record for error, any error, affecting the substantial rights of appellant and have found none. This case is affirmed.

Affirmed.

All the Judges concur.