Appellant was convicted of murder in the first degree and sentenced to life imprisonment.
The evidence as produced by the State tended to establish the following facts. Around 11:00 or 11:30 P.M., on June 18, 1975, appellant and several other men gathered along Rose Street in Citronelle, Alabama. Discussions of previous fights between members of the group began, and as the discourse continued, arguments resulted.
At some point during the argument, appellant engaged in disputes with both the deceased, Eddie Hughes, and another party, Willie Roberts (or Robinson). The conflict between appellant and the deceased was terminated by the intervention of Edward Hughes, the brother of the deceased. During the argument with Roberts, however, appellant was cut on the back of his right shoulder. This injury was apparently a knife wound inflicted by Roberts.
Appellant thereupon departed from the immediate vicinity of the gathering and proceeded to a relative's house across the street to examine his wound. After a brief interval, appellant then left the relative's house and went to his own house a short distance away. While at his house, appellant procured from a closet a loaded shotgun belonging to his brother. From there, *Page 842 
he then proceeded back to the site where the group had gathered.
Before he reached the group, appellant placed the shotgun at the corner of the house in front of which the group had gathered. As appellant reached the group, he inquired as to the whereabouts of Willie Roberts. Roberts had left the area and appellant was informed of this.
Appellant then displayed his wound to the group and he was advised to see a doctor. Turning to the deceased, Eddie Hughes, appellant began asking the deceased why he had given Roberts the knife with which to cut him.
The deceased explained to appellant that he had not given Roberts the knife and in proof thereof he attempted to show appellant that his knife was clean. Appellant's reply to the deceased was, "I'm going to kill you."
Appellant proceeded to the corner of the house where he had placed the shotgun, picked the shotgun up, and turned toward the deceased, who had followed appellant. The deceased was still trying to convince appellant that he had not given Roberts a knife. As the deceased approached, appellant fired the shotgun, hitting the deceased in the midsection. The deceased fell to the ground and called for help, but as other members of the group attempted to provide some aid, appellant warned them not to come near.
One Alonzo Feagin thereupon got into a car and backed it out onto the road. Two others jumped into the car and Feagin began to move the car up the road. Appellant turned his shotgun and fired at the car. Feagin was hit and the car careened off the road and into a ditch. Both the deceased and Feagin died from the gunshot wounds.
Leaving the scene of the shootings, appellant returned to his home. From there, his mother took him to a doctor for treatment of his wound and then to the police station in Citronelle.
While at the police station, appellant was informed of his right to counsel and his right to remain silent by reading theMiranda warning. Appellant waived these rights by signing a waiver form. Appellant then made a statement admitting the shootings.
Appellant was indicted, tried, and convicted for unlawfully and with malice aforethought killing Eddie Hughes by shooting him with a shotgun.
The above facts are taken from the record on appeal. Appellant, however, made other assertions in his brief on appeal which cannot be substantiated by the record. These assertions are as follows:
 "During voir dire examination of the venire, the Court asked if any member of the jury was related by blood or marriage to any one of the prospective witnesses whose names the Court had read (R. iv, v). The Court also asked if any member of the jury knew of any reason whatsoever why he could not fairly and impartially try this case based upon the evidence that is heard in the courtroom (R. v). Herman Edward Beard, who ultimately served on the petit jury, did not respond to either of these questions (R. v, 5). Nowhere in the voir dire examination of the venire did the Court ask if any members of the jury were related by blood or marriage with the deceased or members of his family (R. i-v)."
Furthermore, in his argument on appeal, appellant also asserted the following:
 "One of the members of the jury was related to the deceased, to a subpoenaed witness and to an individual whose death was brought out through the entire course of the trial having allegedly been caused by the Appellant (Deposition of Herman Edward Beard) and nowhere in the voir dire of the jury did the Court or counsel for the Appellant request the qualification of the jury as to any relationship by blood or marriage to the deceased or members of his family (R. i-v)."
The citations for these allegations, designated "R.," and the "Deposition of Herman Edward Beard," are not contained in the record, nor is there any other indication in the record that these alleged occurrences took place. Upon these unsupported statements, appellant maintains that he was denied *Page 843 
his constitutional right to a fair trial by an impartial jury.
Appellee argues that since there is no transcript of the voir dire examination contained in the record and, since the alleged facts of kinship are otherwise not revealed by the record, the matter of irregularities in the voir dire examination is not properly reviewable on appeal. It is maintained that the court is bound by the record.
As a general rule, it has been firmly established that the reviewing court may only consider matters contained in the record as it is filed on appeal. Harris v. State, 57 Ala. App. 558, 329 So.2d 618 (1976); Blakely v. State, 28 Ala. App. 574,190 So. 102 (1939). This principle often finds expression in the phrase that the appellate courts are "bound by the contents of the record." Butler v. State, 285 Ala. 387, 393,232 So.2d 631, 636, cert. den. 406 U.S. 939, 92 S.Ct. 1807, 32 L.Ed. 140
(1972). See: Williams v. State, 52 Ala. App. 207, 290 So.2d 668
(1973), cert. den. 292 Ala. 758, 290 So.2d 672 (1974).
As a corollary to this rule, the appellate court cannot consider any matter outside of the record on appeal. Dates v.State, 282 Ala. 457, 212 So.2d 845 (1968). Therefore, facts asserted in the brief of the appellant or of the appellee, which cannot be ascertained from the record, cannot be reviewed. Dockery v. State, 269 Ala. 564, 114 So.2d 394 (1959);Walker v. State, 223 Ala. 294, 135 So. 438 (1931); Boyd v.State, 50 Ala. App. 394, 279 So.2d 565 (1973); Thomas v. State,49 Ala. App. 537, 274 So.2d 93 (1973); Hayes v. State,33 Ala. App. 364, 33 So.2d 744 (1948).
In Thomas, supra, upon appeal, the appellant therein contended that the trial court committed reversible error in denying his motion for a mistrial based on the conduct of a prospective juror on her qualifying examination. Appellant, in his brief, maintained that during the court's examination the prospective juror failed to reveal her acquaintance with the prosecuting witness and her knowledge of the facts of the case. It was further asserted that appellant had to "smoke her out" on voir dire, but that her conduct nevertheless created "ineradicable prejudice against the defendant." Id.49 Ala. App. at 539, 274 So.2d at 95. The court stated:
 "We here can be guided only by the record before us. . . . The record is silent as to the court's qualifying questions to the juror and her answers thereto. We are bound by the record and cannot consider statements in brief not supported by the record."
From the foregoing authority, it can be concluded that in the present case the factual assertions made by the appellant in his brief concerning irregularities in the jury examination must be disregarded.
Appellant indicates in his brief that a sworn statement in support of the facts as asserted in his brief was to be filed with the Court of Criminal Appeals. By what authority this statement was to be filed was not indicated. Furthermore, appellant also indicates that a deposition of Herman Edward Beard is available to the Court. The deposition was not made part of the record.[1] In any respect, these documents cannot be considered. Appellate courts are bound by the record on appeal, and such record may not be supplemented, impeached, or contradicted by affidavits or otherwise by matters dehors the record. Williams v. State, 52 Ala. App. 207, 290 So.2d 668
(1973), cert. denied, 292 Ala. 758, 290 So.2d 672 (1974);Colburn v. State, 40 Ala. App. 248, 112 So.2d 800, cert. denied,269 Ala. 694, 112 So.2d 804 (1959).
Butler, supra, concerned circumstances similar to those in the present case. The attorneys for the Appellant therein submitted affidavits to the appellate court to be made a part of the record on appeal. In substance, these affidavits alleged that at the voir dire examination of prospective jurors, several jurors were excluded on the *Page 844 
grounds that they opposed the death penalty. Neither the record nor the transcript of evidence contained any matter concerning the voir dire examination. In refusing to consider the affidavits, the court noted that "[e]x parte affidavits of the nature in question cannot be made a part of the record. . . ."Id., 285 Ala. at 393, 232 So.2d at 636.
During the trial of appellant, the prosecution introduced evidence of another crime which appellant allegedly committed and which was not charged in the indictment. This evidence was admitted over the objection of appellant.
The evidence in controversy, as produced by the prosecution, tended to show that appellant, after having shot Eddie Hughes, proceeded to commit a subsequent crime by the shooting and killing of Alonzo Feagin. The prosecution introduced this evidence by the testimony of the detectives investigating the homicide of Eddie Hughes, by the use of a photograph depicting the body of Alonzo Feagin, and by the testimony of various witnesses to the homicide of Eddie Hughes. The prosecution also referred to the death of Feagin in its closing argument.
Appellant contends that evidence of the second homicide, which was allegedly committed by him, was prejudicial to the appellant, and that the admission of such evidence over appellant's objection was error requiring reversal. Appellant argues that this evidence prejudiced and inflamed the jury so that a fair and impartial decision was not possible. Furthermore, it was claimed that the introduction of such evidence effectively put the appellant on trial for two crimes, one of which was not in the indictment.
As a general rule, in the criminal prosecution of a person for the alleged commission of a particular crime, evidence of other acts which of themselves constitute distinct and independent offenses is not admissible. Brantley v. State,294 Ala. 344, 317 So.2d 345, on remand, 55 Ala. App. 717,317 So.2d 347, cert. denied, 294 Ala. 346, 317 So.2d 348 (1975); Garnerv. State, 269 Ala. 531, 114 So.2d 385 (1959); Mason v. State,259 Ala. 438, 66 So.2d 557 (1953); Murphy v. State, 52 Ala. App. 490, 294 So.2d 457, cert. denied, 292 Ala. 743, 294 So.2d 462
(1974); see 1 J.R. McElroy, The Law of Evidence in Alabama § 69.01, at 166 (2d ed. 1959) [Hereinafter cited as McElroy].
This rule is regarded as an application of the character rule which prohibits the State from initially proving the defendant's bad character. The evidence when found inadmissible is considered to be relevant only for the purpose of showing the accused's guilt via his bad character, i.e., showing a probability that the accused committed the crime for which he is being tried because his character is of a criminal nature, or because he has a criminal inclination or propensity. The use of the evidence for such a purpose is disfavored. See: Mason v.State, 259 Ala. 438, 66 So.2d 557 (1953); Brasher v. State,249 Ala. 96, 30 So.2d 3 (1947); McCormick, The Law of Evidence § 190, at 447 (Cleary ed. 1972) [Hereinafter cited as McCormick];
1 McElroy § 69.01, at 166-67.
The apparent justification for the rule is that the introduction of evidence of other separate and distinct offenses requires the accused to defend himself against charges which do not form a part of the indictment and which the defendant is not called on to answer. Garner v. State, 269 Ala. 531, 114 So.2d 385 (1959); Mason v. State, 259 Ala. 438,66 So.2d 557 (1953). Alternatively, it has been suggested that the actual justification is that in the setting of a jury trial, the probative value of the evidence is out-weighed by the danger of prejudice. McCormick § 190, at 447.
The general rule, however, is subject to several exceptions. If the evidence of separate offenses is offered for certain recognized purposes, the rule of exclusion becomes inapplicable. Thus, it has been stated:
 "Evidence of other distinct criminal acts is admissible when relevant to the crime charged, as bearing on scienter, intent, motive, res gestae, or to establish the identity of the accused. . . . The *Page 845 
authorities also recognize such an exception to show system or plan usually to identify the accused or to show intent."
Garner v. State, 269 Ala. 531, 533, 114 So.2d 385, 386 (1959).
A more complete listing of these purposes had been given as follows:
 "`[The] exceptions fall under the following general divisions: (1) Relevancy as part of res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter, or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes.'"
Murphy v. State, 52 Ala. App. 490, 494, 294 So.2d 457, 461, cert. denied, 292 Ala. 743, 294 So.2d 462 (1974), quoting Wharton, Criminal Evidence § 31. For purposes of the present case, this list is sufficient, although variations and additions do exist. See: McCormick § 190, at 448-51; 1 McElroy
§ 69.01, at 167-70.
Whatever exception is argued, however, it is clear that the evidence is only admissible if relevant to the crime charged.Garner, supra.
In the present case, appellee has asserted that the res gestae exception is applicable. Admissibility for this purpose does make a strong case, but other exceptions also are available. See: 1 McElroy § 70.12, at 183-88. Examination will therefore be made of all purposes for the evidence, which would apply in these circumstances.
"Evidence of the accused's commission of another crime is admissible if such other crime is inseparably connected with, or is a part of the res gestae of the now-charged crime; or, if such other crime and the now-charged crime are parts of one continuous transaction or one continuous criminal occurrence." 1 McElroy § 69.01 (3), at 167. This principle has been firmly established by the Alabama courts. See: e.g., Wilson v. State,268 Ala. 86, 105 So.2d 66 (1958); Jackson v. State, 229 Ala. 48,155 So. 581 (1934); Wilcutt v. State, 41 Ala. App. 25,123 So.2d 193 (1960).
What constitutes the res gestae or the same transaction, however, must be factually determined — no definition could encompass every set of circumstances which may be encountered. Nevertheless, an examination of the cases which rely on the res gestae exception reveal a certain pattern of treatment for similar sets of facts. To be noted are those patterns applicable to the present case.
Recurring in several cases are the circumstances in which the defendant in a homicide prosecution killed another person at the same time and place. Proof of the crime not included in the indictment is allowed as part of the res gestae. Smarr v.State, 260 Ala. 30, 68 So.2d 6 (1953) (Evidence of the murder of the deceased's two sisters which occurred within a short time of the homicide being prosecuted was admitted.);Kilpatrick v. State, 257 Ala. 316, 59 So.2d 61 (1952) (Evidence of the complete incident — a gunfight in which the deceased and two others were killed — was admitted in the trial for the murder of the deceased.); Granberry v. State, 182 Ala. 4,62 So. 52 (1913) (Following an argument, defendant shot and killed the deceased. Defendant then pursued and killed a witness to the homicide. Evidence of the full transaction was admitted at the prosecution for the murder of the deceased.); Hoback v.State, Ala.Cr.App., 338 So.2d 439 (8 Div. 809, June, 1976) (Photographs of the deceased and another victim slumped into the deceased's lap were admitted.). See: Higginbotham v. State,262 Ala. 236, 78 So.2d 637 (1955); Grissett v. State, 241 Ala. 343, 2 So.2d 399 (1941).
The lapse of time between the two crimes will present no difficulty, as evidence of the collateral crime has been admitted when the crimes were almost simultaneous, Kilpatrickv. State, 257 Ala. 316, 59 So.2d 61 (1952), and when the sequence and time of the offenses could not be determined,Smarr v. State, 260 Ala. 30, 68 So.2d 6 (1953). A longer interval would not prevent *Page 846 
a finding that the two crimes were within the same transaction.
As a final note to the res gestae exception it is interesting to observe the conclusive language of the court in Kilpatrick, supra:
 "Sometimes as a part of a single transaction more than one offense is charged to have been committed. . . . [I]f in that occurrence [the accused] shoots different persons by different discharges of his firearm, an offense can be fastened separately as to each person so injured or killed, although there was but one transaction, and upon a trial for one such offense the whole transaction is admissible."
McElroy, in his examination of Alabama evidence cases, discovered four other purposes for the introduction of evidence of other crimes in a homicide prosecution. 1 McElroy § 70.12, at 183-88. Two of these purposes, to show a plan, design, scheme, or system and to rebut the accused's evidence of his good character, would at best make weak arguments for admissibility in the present case. However, two other purposes, to show intent and to show motive, require consideration.
When an issue arises in the prosecution for an offense as to whether the accused acted intentionally or accidentally, the accused's commission of another crime tends to show that the actions were intentional. 1 McElroy § 70.12 (2), at 184. Thus, in Grissett v. State, 241 Ala. 343, 2 So.2d 399 (1941), evidence of the successive killings of three persons was allowed as probative of the accused's intent.
To show motive is also a frequent exception to the general rule. In this context, motive is employed to define the feeling or passion of the accused, which propelled him towards the commission of the charged crime. 1 McElroy § 70.12 (4), at 185. Evidence of the collateral homicide is properly admitted for such a purpose. Hardy v. State, 51 Ala. App. 489, 286 So.2d 899
(1973).
Earlier cases are in agreement with the use of such evidence to show motive, although the formulation of the purpose is not the same. Thus, it is often said that the evidence is admissible to show that the accused was ". . . in a reckless, dangerous, malicious mood," Sims v. State, 253 Ala. 666,46 So.2d 564 (1950), to show the ". . . hostile spirit which actuated defendant." Granberry v. State, 182 Ala. 4, 62 So. 52
(1913), or to ". . . throw light upon the animus of the perpetrator." Seams v. State, 84 Ala. 410, 4 So. 521 (1887).
In summation, the foregoing authorities clearly indicate that the evidence of the shooting and killing of Alonzo Feagin would be admissible in the prosecution for the homicide of Eddie Hughes. Once the evidence was admitted, further proof of the collateral crime and arguments concerning that evidence would also be proper. See: Granberry, supra.
We have reviewed the entire record as required by T. 15, § 389 of the Code of Alabama 1940, recompiled 1958, and find no reversible error therein.
The foregoing opinion was prepared by Honorable JOSEPH A. COLQUITT, Circuit Judge, temporarily on duty on the Court of Criminal Appeals pursuant to subsection (4) of § 38, T. 13, Code of Alabama 1940, recompiled 1958; the Court has adopted his opinion as its own.
The judgment below is hereby
AFFIRMED.
TYSON, HARRIS, DeCARLO and BOOKOUT, JJ., concur.
[1] Subsequent to the writing of this opinion, the author received a transcript of a hearing held in the Mobile Circuit Court on July 30, 1976, concerning this matter. This transcript is not a part of the record, and cannot be considered. *Page 847