LEIGH M. CLARK, Retired Circuit Judge.
A jury found defendant (appellant) guilty of an assault with the intent to murder Frank William Bryant. The court fixed defendant’s punishment at imprisonment for seven years and sentenced him accordingly.
The three following assertions of error are made by appellant:
“I. Evidence of a separate and distinct crime not charged in the indictment was erroneously admitted and requires this case to be reversed.
“II. Admission of evidence regarding defendant’s reputation for peace and quiet where defendant had not *338 put that aspect of his character in issue was erroneous and requires this case be reversed.
“HI. Failure to exclude reference by the State in closing argument that defendant failed to call character witnesses which were equally available to both parties was erroneous and requires that this case be reversed.”
As to I, there was considerable evidence, some of it very indefinite and confusing, as to an assault upon another person, one Steven King, a few moments before the alleged assault upon William Bryant, the one on the front porch of a house owned by Mr. King and the other in the front room of the house. It is reasonably clear from the evidence in the instant case that the consummated assault upon Mr. King was not made by defendant but by one Perry Goodman and one Johnny Childers. The conviction of Childers has been affirmed. Childers v. State, Ala.Cr.App., 389 So.2d 193 (Oct. 7, 1980), in which the issues, on appeal, were different from the issues on this appeal. Childers and defendant herein were in their twenties, while each of the two alleged victims was about fifty years of age. Appellant emphasizes the general exclusionary rule that testimony as to other offenses is not admissible. Appellee replies by emphasizing exceptions to the general exclusionary rule. Both rely upon Lucy v. State, Ala.Cr.App., 340 So.2d 840 (1976), cert. denied, 340 So.2d 847 in which the following statement of Judge McElroy, as now found in Gamble, McElroy’s Alabama Evidence, § 69.01(3) (1977) is quoted:
“Evidence of the accused’s commission of another crime is admissible if such other crime is inseparately connected with or is a part of the res gestae of the now-charged crime. This rule is often expressed in terms of the other crime and the now-charged crime being parts of one continuous transaction or one continuous criminal occurrence.”
The parties, however, do not come to an agreement on the question of the admissibility of the particular evidence, appellant saying that as the evidence shows that the defendant did not make an assault upon King, the evidence as to such assault was not relevant in the instant case and appellee saying that it “was so intertwined and part of the transaction in question that is was properly admitted and was in no way prejudicial to the Appellant.”
We are disappointed by reason of a lack of clarity of the evidence on the particular subject. In fact, there is much room for clarification in several respects as to the evidence as a whole in this case. We find several instances in which it was not made clear as to the person to whom the personal pronoun “he” or “him” was referable, unless we go outside the immediate context containing the reference and look for the last antecedent of the pronoun. We believe that perhaps the jury, who heard and saw, was not as confused as one who reads the transcript, for the reason that probably in most of the instances when a witness referred to defendant as “he” or “him,” the witness, by movement of a hand or a finger, or his head or his eyes, was directing attention to the defendant. Although it seems to us that it was made reasonably clear to the jury that it was Childers who chiefly, if not exclusively, assaulted King, there are indications in the transcript of the proceedings, which, however, did not come to the attention of the jury, that a separate indictment had been returned against defendant herein, as well as Childers, for the alleged assault upon King with intent to murder him.
Incidentally, we observe other portions of the transcript that tend to confuse. One is that on occasions the name “Reynolds” is found in the transcript, which we have determined was meant for the defendant “Randall.” We have endeavored to keep these confusing parts of the transcript from adversely affecting either party or anyone else; we do not deem them to have been the fault of any one party or any one person alone. We blame neither the judge, nor either party, nor any lawyer, clerk, court reporter, typist or any other person. We mention the irregularities chiefly to show *339 all concerned that none of them has led us to our determination of the issues on appeal, even though they have made our determination at least doubly difficult.
Appellant’s first sentence in his brief under the statement of his contention I is, “The Court allowed, over objection, evidence that a Mr. Stephen King was cut with a knife while standing at the door of a house belonging to him. (R. 33).” Page 33 of the record shows:
“Q. After this was all over did you see Mr. Steven King?
“A. Yes, sir.
“Q. Would you describe his appearance or condition at that time?
“A. Yes, sir.
“Q. What was it?
“A. He was stabbed in the side, cut in the jaw. And then his face up there—
“MR. PERRY: Your Honor, I would object to what he seen on someone else. They are bringing in something else about a crime about something else that happened to some other person other than the parties involved in this suit. They are bringing in without any pretense of it having any relevancy to this case. It has no materiality to the issues before the jury and this Court at this time. We would object to it on those grounds.
“THE COURT: Overruled.
“Q. Okay. What if anything did you do with Mr. King after you saw him in this condition?
“A. His son took him to the doctor.
“Q. You said when you went inside this house — When you went inside this door and shut it you put a—
“A. A wooden latch on it.”
The objection shown to the material just quoted is the only objection we find that was made to evidence pertaining to the assault upon King. William Bryant, the alleged victim in the instant case, was the witness on the stand when the objection was made. He had already testified at length to a fast moving incident that commenced about 3:30 P.M. July 7, 1979, at the Casino, located on Eleventh Avenue and Twenty-sixth Street in Bessemer, moved across the street to a house owned by King, on the front porch of which King was stabbed by Childers and in the front room of which the alleged assault by defendant upon Bryant took place. Before the objection was made, the particular witness had testified that he had played a game of pool with Childers and had won the game, that Childers became mad and started arguing, that Childers had a knife and followed the witness. His testimony continued:
“Q. Did you pick up the stick first or did Johnny Childers pull the knife first?
“A. I picked up the stick first because he had pulled the knife. I got the stick— got the stick to keep him off me — from cutting me with the knife.
“Q. He had pulled a knife on you?
“A. Yes, sir.
“Q. Did you see this Defendant?
“A. Yes, sir.
“Q. While this was going on?
“A. Yes, sir.
“A. He was in the Casino — come out of the Casino, him and the other boy, Goodman boy come out of the Casino together.
“Q. And what did they do, this Defendant and the Goodman boy?
“A. He pulled out a knife and started running too. Steven King told me to run in the house.
“Q. And this Defendant, did you see him with a weapon?
“A. Yes, sir.
“Q. What did he have?
“A. He had a durtch.
“Q. Would you tell us what a durtch is?
“A. It was a white-handled durtch about that long.”
The witness further testified that the defendant, defendant’s friends Childers and Goodman, all three, had knives, that the witness ran to King’s house, where King had told him to run, went in the house and that thereafter the defendant “stabbed the door and kicked the door down and come on in.” He said that he and the defendant then started tussling and that defendant *340 “stabbed at the witness two times with a knife” and told the witness two times that he was “going to kill” the witness. He further testified that while he was holding the defendant’s hand that had the knife or durtch in it, one Calvin Greer appeared on the scene in the house with a pistol and put an end to the tussle between the witness and defendant, and defendant left the premises.
If the objection made by defendant was as to evidence as to the attack upon King by Childers, it came too late, for the testimony already disclosed that both Childers and King were involved in the initial part of the incident that apparently terminated with the confrontation between defendant and Bryant in the front room of King’s house. Before the objection was made, the parties to the incident and the circumstances of the incident had been so inextricably linked together that they could not have then been satisfactorily separated. It is to be noted also that the objection was made after the question asked had been largely answered, that the question was answered no further thereafter and that counsel for the State then proceeded with another question. The action of the court in overruling defendant’s objection was not erroneous.
As to appellant’s contention II, he directs attention to the following portion of the cross-examination of the defendant:
“Q. What about your general reputation, Mr. Bryant?[1]
“A. Sir?
“Q. What about your general reputation, is it good?
“MR. TERRY: Your Honor—
“Before I went to the penitentiary—
“THE REPORTER: Just a second, I can only take one at a time.
“THE COURT: Overruled.
“THE REPORTER: I didn’t get your objection.
“MR. TERRY: I objected to him asking a general character representation when his character is not an issue in this trial.
“THE COURT: Did you say general or did you specify to violence?
“MR. TUCKER: I will restate it. Your general reputation in the community for violence?
“A. I used to get in a few fights when I was young. But since I got out in the community where I live at, don’t nobody know me in the community where I stay.
“Q. In ’71 you were convicted of grand larceny; 1971, is that right?
“A. Yes, sir.
“Q. And you got a one-year and one-day sentence for stealing?
“A. Yes, sir.
“Q. In ’73 you were convicted of robbery and you got twenty years?
“A. Yes, sir.
“Q. And your lawyer asked if you were ever arrested any more. Do you have any other arrests on you?
“A. No, sir.
“Q. Wasn’t you arrested with assault with intent to murder before this incident?
“MR. TERRY: Your Honor, I object to that.
“THE COURT: Yes, sir, sustain objection to that Mr. Tucker.”
Appellant argues in his brief that the “general rule prohibits the State from proving the accused’s bad general reputation respecting a particular trait of character,” that it was “therefore improper to allow him to be asked about his character for a specific trait since he had not introduced that character to prove his innocence” and that the “law in Alabama recognizes the principle that in the absence of Defendant placing a specific character trait into an issue, it cannot be elicited by the State.” In support of the contention, he sites Sorrells v. State, 44 Ala.App. 481, 213 So.2d 687 (1968); Bedsole v. State, 274 Ala. 603, 150 So.2d 696 (1963). We read the objection of defendant as directed to State’s counsel’s “asking a general character representation,” and the transcript shows that after the question *341 was changed to call for an answer as to his “general reputation in the community for violence” no further objection was made. We find no error in the court’s action as to the matter.
We should note also, we think, that the injection into the case by the State of testimony by defendant as to his reputation was prompted perhaps by the immediately preceding conclusion of the direct examination of the defendant as a witness, wherein the victim’s “general reputation in the community for violence” was injected. It is as follows:
“Q. On any occasion, are you aware or do you have knowledge of Mr. Bryant’s general reputation in the community for violence?
“A. It is bad.
“Q. What do you mean by bad?
“A. He fights.
“Q. You have known of him to be in fights?
“A. Yes, sir. Like I say, he used to go with my aunt.”
 Appellant’s remaining contention, number III, is addressed to the following occurrence during the closing argument to the jury of counsel for the State:
“MR. TUCKER: But, you didn’t see a single citizen that lives out there in that community with them that knows them, besides that man, who came in here and testified as to their bad reputation?
“MR. TERRY: Your Honor, I object to what witnesses we use in. this trial. He knows that is improper argument.
“MR. TUCKER: There is nothing improper about somebody not bringing in witnesses. They are available to both parties.
“THE COURT: Overruled.”
Although what was meant by the quoted statement of State’s counsel is not as clear to us as we would like for it to be, we are not persuaded that it constitutes argument calculated to cause a jury to draw an inference unfavorable to an opposing party by reason of his failure to present witnesses who are equally available to both parties. It seems that the argument was not addressed to the failure of either party to produce evidence as to “their bad reputation.” Although it is not certain, it seems that “their bad reputation” refers to the “bad reputation” that defendant said Bryant had for violence. Counsel for the State had the right, with fairness to defendant, to comment upon the fact that the evidence as to Bryant’s reputation consisted of the testimony of defendant as distinguished from the testimony of some person who had no interest whatever in the case being tried or its outcome. The second sentence of the objection of defendant’s counsel to the argument, wherein he said, “He [State’s counsel] knows that is improper argument” is hardly ever, if ever, justified. That statement, the last statement, is to be taken into consideration in connection with the court’s ruling on the objection. If the court had then sustained the objection, it could logically follow that it did so on the ground that State’s counsel had made an argument that he knew was improper. Taking all the circumstances into consideration, we find that the court’s ruling was not erroneous.
Notwithstanding our conclusion that the evidence in the case fails to show that appellant seriously injured Bryant, that there was considerable evidence to the effect that appellant was greatly provoked by the violence and insulting language of Bryant directed at appellant and that appellant suffered a serious injury to his head by being hit thereon by Bryant with a stick, we are convinced that the evidence is ample to support the verdict of the jury and uphold the order of the trial court in overruling defendant’s motion for a new trial.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the *342 Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.

. We deem that it is understood that “Mr. Randall” was meant.